IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.F., | : | |
| Petitioner | : | **CASE SEALED** |
| | : | |
| v. | : | No. 462 C.D. 2018 |
| | : | Argued: December 13, 2018 |
| Department of Human Services, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: March 7, 2019

J.F. (Mother) petitions for review of a final order of the Department of Human Services (Department), Bureau of Hearings and Appeals (Bureau), that dismissed her request for a hearing on two founded reports naming her as a perpetrator of abuse of her twin daughters.[1]  The County Children & Youth Social Service Agency (CYS) initially issued an indicated report.  However, after Mother entered an accelerated rehabilitative disposition (ARD) program to resolve a criminal charge of child endangerment, CYS amended the reports to founded.  The Department dismissed Mother's request for a hearing for the stated reason she had no right to an administrative hearing on a founded report.  In this case of first impression, Mother argues that because the ARD proceeding did not adjudicate any of the facts that were recited in the founded reports, she is entitled to an evidentiary hearing.  We reverse and remand.

---

[1] Two founded reports were filed, one for each child, but both reports arose from a single incident of "serious physical neglect."  Stated otherwise, the two reports involve a single incident.

## Background

On July 6, 2017, CYS filed indicated reports that named Mother as a perpetrator of abuse of her twin daughters, C.F. and Chl.F., then 15 months old. The two reports were identical, except for the name of the child. The reports stated that on May 7, 2017, at 2:00 a.m., the police found Mother semi-conscious and intoxicated on a public street and transported her to a hospital for suspected alcohol poisoning. At 6:30 a.m., the hospital contacted police because Mother informed the staff that her two children were home alone. The police went to Mother's residence, where they met W.F. (Father), who worked the late shift. He had been called to the hospital but headed home when he learned that the children were alone. Father and the police found the twins asleep in their cribs. The report stated that Mother admitted that she had left the twins home alone to go to a bar.

The police charged Mother with the crime of "endangering the welfare of children." 18 Pa. C.S. §4304(a)(1).[2] The criminal complaint stated as follows:

> [Mother] did on or about, May 7th 2017, in the County of [  ], while supervising the welfare of a child under 18 years of age commit[] an offense [by] knowingly endanger[ing] the welfare of the child by violating a duty of care, protection or support, that is to say [Mother] did leave her two (2), 15[-]month[-]old children alone in their respective cribs, with no other adult supervision in the home and left the residence during the hours of 0100 through 0800 hours. This is in violation of Section

---

[2] The Crimes Code defines "endangering the welfare of children" as follows:

> (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa. C.S. §4304(a)(1).

2

4304(a)(1) of the Pennsylvania Crimes Code, as amended, 18 Pa.C.S. [§]4304(a)(1).

Criminal Complaint at 2; Reproduced Record at 4a (R.R. ___). The affidavit of probable cause filed in support of the criminal complaint stated, in relevant part, as follows:

2. On 7 May 2017 at 0643 hours, [police officers were] dispatched to [Mother's residence] for a check on the welfare complaint. The complainant was the Charge Nurse at the [ ] Emergency Room. The request made at the time was for the [police] to check on (2) two children who were left alone at the residence. The complainant reported the person making the request was the children's mother who was in the Emergency Room and was intoxicated.

3. [An officer] responded to the residence and attempted to make contact with the occupants…. He had no other information as to who the children were or how old they were. There was no response from the residence after repeated knocking on the door. [The officer] contacted the Charge Nurse for more information and was advised [Father] had just arrived at the [h]ospital, learned that the children were alone, and [was on his way to the residence]. [The officer] stayed at [the residence] awaiting [Father's] arrival.

4. At approximately 0745 hours, [Father] arrived at his residence and entered the residence with Officer [ ]. No persons were found in the home except for [C.F. and Chl.F.]. [C.F. and Chl.F.] are 15[-]month[-]old twin females. They were found asleep in their respective cribs on the 2nd floor of the residence.

5. While waiting for the arrival of [Father at the residence], [the officer] was contacted by the [ ] Borough Police and informed that [Mother] had been transported to the [hospital] at about 0230 hours on May 7th 2017 due to being extremely intoxicated.

6. On 9 May 2017, [Mother] was interviewed [by the police]. [Mother] admitted to leaving the residence sometime after 0001 (sic) hours on May 7th 2017 and going to [a bar] and consuming alcohol to the point that she lost consciousness.

3

Affidavit of Probable Cause, ¶¶2-6; R.R. 6a.

On August 3, 2017, Mother appealed the indicated reports and requested a hearing. The Department assigned her appeal to an Administrative Law Judge (ALJ) to conduct a hearing. Prior to the hearing, CYS amended the reports, changing their status from indicated to founded. This was based on Mother's acceptance into an ARD program on the criminal charge of "child endangerment." CYS filed a motion to dismiss Mother's appeals, asserting that because Mother was named as a perpetrator in a founded report, she had no right to a hearing.

Mother filed a response, asserting that the facts recited in the affidavit of probable cause for the criminal charges did not constitute serious physical neglect under the Child Protective Services Law. *See* 23 Pa. C.S. §6303(a). She further asserted that acceptance into the ARD program to resolve a criminal charge of child endangerment did not constitute an adjudication of the facts set forth in the criminal complaint or in the founded reports.

The ALJ issued a recommended report that Mother's request for a hearing be dismissed. The ALJ noted that the Child Protective Services Law, *inter alia*, defines a "founded report" as one issued where "[t]here has been an acceptance into an accelerated rehabilitative disposition program and the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse." 23 Pa. C.S. §6303(a). The ALJ concluded that the reason for Mother's acceptance into ARD on the child endangerment charge involved the same factual circumstances covered in the founded reports. Accordingly, CYS appropriately revised the indicated reports to founded reports. Because the Child Protective Services Law does not authorize an administrative hearing on a founded report, the ALJ granted CYS's motion to dismiss Mother's hearing request.

4

The Bureau adopted the ALJ's recommended adjudication in its entirety.

## Appeal

Mother petitioned for this Court's review, raising one issue.[3] She asserts that the Bureau erred in dismissing her appeal without an evidentiary hearing. Her acceptance into ARD did not adjudicate the factual allegations in the criminal complaint or in the affidavit of probable cause. There has never been a hearing in any tribunal to adjudicate those facts. Stated otherwise, the factual claims in the founded reports to support the conclusion that Mother committed "serious physical neglect"[4] have never been adjudicated. Further, a defendant may be innocent of the criminal charge but choose ARD simply to avoid the risk of an unfair verdict. Mother contends that she is entitled to an evidentiary hearing to provide her version of events and to explain her reasons for entering into ARD.

The Department responds that the affidavit of probable cause contains the same statements as those recited in the founded reports. Thus, Mother's acceptance into ARD constitutes a founded report of child neglect, and the Child

---

[3] Our review determines whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence. *Bird v. Department of Public Welfare*, 731 A.2d 660, 663 (Pa. Cmwlth. 1999). Where the issue is one of law, our standard of review is *de novo* and our scope of review is plenary. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 963 A.2d 1274, 1276 (Pa. 2009).

[4] "Serious physical neglect" is defined, in relevant part, as:

> Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:
>
> > (1) *A repeated, prolonged or egregious failure to supervise a child* in a manner that is appropriate considering the child's developmental age and abilities.

23 Pa. C.S. §6303(a) (emphasis added).

Protective Services Law does not authorize any perpetrator a hearing on a founded report.

## The Child Protective Services Law

There are two different types of child abuse reports that are maintained by the ChildLine Registry:[5] indicated and founded. The Child Protective Services Law defines an indicated report as follows:

> (1) Subject to paragraphs (2) and (3), a report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following:
>
> > (i) Available medical evidence.
> >
> > (ii) The child protective service investigation.
> >
> > (iii) An admission of the acts of abuse by the perpetrator.
>
> (2) A report may be indicated under paragraph (1)(i) or (ii) for any child who is the victim of child abuse, regardless of the number of alleged perpetrators.
>
> (3) A report may be indicated under paragraph (1)(i) or (ii) listing the perpetrator as "unknown" if substantial evidence of abuse by a perpetrator exists, but the department or county agency is unable to identify the specific perpetrator.

23 Pa. C.S. §6303(a). By contrast, a founded report of child abuse is issued, *inter alia*, in the following circumstances:

---

[5] ChildLine, a unit within the Department, operates a statewide system for receiving indicated and actual reports of child abuse; refers the reports for investigation; and maintains the reports for reference. 55 Pa. Code §3490.4 (definition of "ChildLine"). The ChildLine Registry is maintained in accordance with the Child Protective Services Law, 23 Pa. C.S. §§6301–6386.

6

A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:

(1) *There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse*. The judicial adjudication may include any of the following:

> (i) The entry of a plea of guilty or nolo contendere.
>
> (ii) A finding of guilt to a criminal charge.
>
> (iii) A finding of dependency under 42 Pa. C.S. §6341 (relating to adjudication) if the court has entered a finding that a child who is the subject of the report has been abused.
>
> (iv) A finding of delinquency under 42 Pa. C.S. §6341 if the court has entered a finding that the child who is the subject of the report has been abused by the child who was found to be delinquent.

(2) There has been an acceptance into an accelerated rehabilitative disposition program and the *reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse*.

23 Pa. C.S. §6303(a) (emphasis added).

The Child Protective Services Law allows a perpetrator of child abuse named in an indicated report to request the expunction of that report from the ChildLine Registry. Section 6341 states, in relevant part, as follows:

> (a) General rule. – Notwithstanding section 6338.1 (relating to expunction of information of perpetrator who was under 18 years of age when child abuse was committed):
>
> * * *
>
> (2) Any person named as a perpetrator, and any school employee named, in an indicated report of

7

child abuse may, within 90 days of being notified of the status of the report, request an administrative review by, or appeal and request a hearing before, the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter. The request shall be in writing in a manner prescribed by the department.

\*\*\*

(c)   Review of refusal of request.**--**Subject to subsection (c.1), if the secretary refuses a request under subsection (a)(1) or a request for administrative review under subsection (a)(2), or does not act within the prescribed time, the perpetrator or school employee shall have the right to appeal and request a hearing before the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter….

(c.1)   Founded reports.**--**A person named as a perpetrator in a founded report of child abuse must provide to the department a court order indicating that the underlying adjudication that formed the basis of the founded report has been reversed or vacated.

(c.2)   *Hearing.**--**A person making an appeal under subsection (a)(2) or (c) shall have the right to a timely hearing to determine the merits of the appeal….*

23 Pa. C.S. §6341 (emphasis added).  The hearing guaranteed by Section 6341(c.2) of the Child Protective Services Law is limited to indicated reports and does not apply to founded reports.  The Child Protective Services Law is silent with respect to hearings on founded reports.

**Relevant Precedent**

In *J.G. v. Department of Public Welfare*, 795 A.2d 1089, 1090 (Pa. Cmwlth. 2002), the CYS issued an indicated report of child abuse against both parents because their two-month-old son suffered from "a condition commonly

known as 'Shaken Baby Syndrome.'" J.G. (the mother) appealed. In a civil proceeding involving both parents, the child was found to be the victim of child abuse and adjudicated dependent by a trial court. Based on the trial court's adjudication, CYS amended the indicated report to founded. The Department dismissed the mother's appeal because the Child Protective Services Law does not provide for a hearing on founded reports. The mother petitioned for this Court's review, and we concluded that the mother was entitled to a hearing before the Department.

We acknowledged that the Child Protective Services Law did not provide a mechanism for a perpetrator to challenge a founded report. However, we concluded that "[t]his statutory omission does not mean that a named perpetrator in a founded report does not have any right of appeal." *Id*. at 1092. In reaching this conclusion, we looked to the Administrative Agency Law, which defines an "adjudication" as a final order that affects a person's personal or property rights or privilege. 2 Pa. C.S. §101.[6] A founded report of child abuse constitutes an "adjudication" because it impacts a "perpetrator's personal rights by branding him or her as a child abuser in a Statewide central register of child abuse." *J.G.*, 795 A.2d at 1092. The Administrative Agency Law expressly states that no agency adjudication is valid unless the parties thereto are given a hearing. 2 Pa. C.S. §504.[7]

---

[6] It defines "[a]djudication" as follows:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa. C.S. §101.

[7] It provides:

9

Thus, a founded report issued without a hearing on the factual statements in the report constitutes an invalid adjudication.

In the dependency proceeding that took place in *J.G.*, the trial court found that the child suffered physical abuse while under the supervision of both parents. However, it did not find that the mother was the one who committed the abuse. Because this critical factual question had not been decided, the mother was entitled to an administrative hearing before the Department to challenge the accuracy of the founded report naming her as a perpetrator of child abuse. We reversed the Department's dismissal of her appeal and remanded the matter for hearing.

In reaching this conclusion, this Court cautioned that an administrative hearing on a founded report will not be allowed where it would constitute a collateral attack of a judicial adjudication. We stated:

> Where … a founded report is based upon a judicial adjudication in a non-criminal proceeding, such as a dependency action, in which the court enters a finding that the child was abused, but does not issue a corresponding finding that the named perpetrator was responsible for the abuse, *a named perpetrator is entitled to an administrative appeal before the secretary to determine whether the underlying adjudication of child abuse supports a "founded report" of abuse.*

*J.G.*, 795 A.2d at 1093 (emphasis added).

---

*No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.* All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

2 Pa. C.S. §504 (emphasis added).

In *R.F. v. Department of Public Welfare*, 801 A.2d 646 (Pa. Cmwlth. 2002), the CYS filed a founded report that named the father, who pled *nolo contendere* "to count 4 of the complaint," *i.e.*, child endangerment, as the perpetrator of child sexual abuse. The father appealed the founded report, noting that he did not plead guilty to sexual abuse, which had been "a condition of his plea." *Id.* at 648. On appeal, this Court held that the father was entitled to a hearing as to whether the *nolo contendere* plea itself established child sexual abuse. We remanded the matter for an administrative hearing before the Department.

**Analysis**

Mother argues that under the principles established in *J.G.* and *R.F.*, she is entitled to an evidentiary hearing under the Administrative Agency Law to provide her version of the incident and to explain her reasons for entering the ARD program. None of the facts recited in the founded reports have ever been adjudicated in a court of law. Mother asserts that the criminal charge of "child endangerment" is not the same as "serious physical neglect," which must be "repeated, prolonged or egregious." 23 Pa. C.S. §6303(a). The Department responds that *J.G.* is distinguishable because it involved a dependency proceeding. Mother cannot be permitted to lodge a collateral attack on her entry into an ARD program, which involves a criminal, not a civil, matter.

It is well established that a judgment of a court of law cannot be subjected to collateral attack in a subsequent proceeding. Our Supreme Court has held that "a judgment, order or decree rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to collateral attack in any other proceeding." *Moeller v. Washington County*, 44 A.2d 252, 254 (Pa. 1945). This principle was followed in

11

*J.G.*, 795 A.2d 1089. Here, there has been no judgment. Indeed, "admission into an ARD program 'places the criminal proceedings in abeyance'" and "successful completion of ARD 'is not equivalent to a conviction under any circumstances.'" *Kearney v. Bureau of Professional and Occupational Affairs*, 172 A.3d 127, 136 (Pa. Cmwlth. 2007) (quoting *Commonwealth v. Brown*, 673 A.2d 975, 979 (Pa. Super. 1996)).[8] Mother has not been convicted, and there has been no final judgment rendered.

In *J.G.*, this Court held that a dependency adjudication will support a founded report where the court has entered a "finding that a child who is the subject of the report has been abused." *J.G.*, 795 A.2d at 1092. Because the dependency adjudication in *J.G.* was silent on whether the mother was the perpetrator, there was no finding on that question. Accordingly, there was no possibility of a collateral attack upon the Court's judgment. Likewise, in *R.F.*, 801 A.2d 646, the father's underlying plea did not involve a judicial adjudication of child sexual abuse, and this entitled him to a hearing on the founded report of child sexual abuse.

The Child Protective Services Law states that acceptance into an ARD program constitutes a founded report where "the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse." 23 Pa. C.S. §6303(a). A founded report is unquestionably an adjudication. *See J.G.*, 795 A.2d at 1092. However, "[n]o adjudication … shall be valid … [without] notice of

---

[8] There is an express exception for driving under the influence. In *Whalen v. Department of Transportation, Bureau of Driver Licensing*, 32 A.3d 677 (Pa. 2011), the Supreme Court held that entry into ARD counts as a prior offense for purposes of restoring operating privileges of repeat drunk driving offenders by mandating installation of an ignition interlock system. The holding was based on statutory language specifically defining acceptance into an ARD program as a "prior offense" under Section 3806(a) of the Vehicle Code, 75 Pa. C.S. §3806(a). Notably, the Child Protective Services Law does not define an ARD as a conviction.

12

a hearing and an opportunity to be heard." 2 Pa. C.S. §504. Where a founded report is based on facts not yet adjudicated, the perpetrator is entitled to a hearing before the Department conducted in accordance with the Administrative Agency Law. *J.G.*, 795 A.2d at 1092.

As Mother observes, there has been no judicial finding about the risk in which she placed her children "because no record of the ARD proceeding was submitted." Mother's Brief at 8.[9] She argues that the allegations in the criminal complaint and the statements in an affidavit of probable cause cannot become adjudicated facts based solely on entry into ARD. We agree. No facts were adjudicated in the ARD proceeding. Accordingly, Mother's appeal of the founded report does not lodge a collateral attack on a judicial determination. *J.G.*, 795 A.2d at 1093. Thus, Mother is entitled to a hearing on whether CYS correctly amended the indicated reports of child abuse to make them founded reports.

## Conclusion

For all these reasons, we reverse the order of Bureau of Hearings and Appeals and remand the matter for hearing in accordance with the Administrative Agency Law.

_____
MARY HANNAH LEAVITT, President Judge

---

[9] Even if a record existed, it would likely be inconclusive. Generally, a defendant does not admit to any facts, and a judge does not adjudicate any facts as a condition to entry into ARD.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.F.,                              :
           Petitioner         :      **CASE SEALED**
                            :
           v.                   :      No. 462 C.D. 2018
                            :
Department of Human Services,      :
           Respondent        :

# **O R D E R**

AND NOW, this 7th day of March, 2019, the final administrative order of the Department of Human Services, Bureau of Hearings and Appeals, dated March 28, 2018, is hereby REVERSED and the matter is REMANDED for hearing in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.F., | : | |
| | : | |
| Petitioner | : | **CASE SEALED** |
| | : | |
| v. | : | No. 462 C.D. 2018 |
| | : | Argued: December 13, 2018 |
| Department of Human Services, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

DISSENTING OPINION
BY JUDGE WOJCIK                                         FILED:  March 7, 2019


Respectfully, I disagree.  The Majority opinion effectively expands our case law to hold that an evidentiary hearing must be afforded by the Department of Human Services (Department) to support every founded report of child abuse.  In doing so, I believe that the Majority reframes J.F.'s (Petitioner) appeal as asserting a denial of due process instead of a substantial evidence challenge based on an inapplicable statutory provision.  Further, I perceive our decisions in *J.G. v. Department of Public Welfare*, 795 A.2d 1089 (Pa. Cmwlth. (Pa. Cmwlth. 2002), and *R.F. v. Department of Public Welfare*, 801 A.2d 646 (Pa. Cmwlth. 2002), as materially distinguishable, such that the Majority's reliance on them is misplaced.  Finally, I believe that the plain language of Section 6303 of the

Child Protective Services Law (CPSL), 23 Pa. C.S. §6303, as amended in 2013, demonstrates a need to revisit and clarify our analysis in *J.G.*

**Facts/procedural history**

The record reflects that Petitioner admitted to police on May 8, 2017, and again to the County Children & Youth Social Service Agency (CYS) on May 22, 2017, that she left her 15-month-old twin daughters, C.F. and Chl.F., alone in their cribs at approximately 1:00 a.m. on May 7, 2017, went to a bar, and drank until she lost consciousness. Affidavit of Probable Cause, Reproduced Record (R.R.) at 6a; CY48-Investigation/Assessment Outcome Reports, Supplemental Reproduced Record (S.R.R.) at 3b-22b. Police found Petitioner intoxicated and semi-conscious and transported her to a hospital. At 3:30 a.m., police went to Petitioner's home to inform someone of her whereabouts. There was no answer, and police were unaware that the children were inside. Subsequently, a charge nurse contacted police, who went to Petitioner's home again at 6:30 a.m. and again found no response. The children's father went to the hospital and was directed to go home. He arrived at approximately 7:30 a.m. and entered with police. The children were left alone for about six and a half hours. See S.R.R. at 11b.[1]

Petitioner was charged with two counts of Endangering the Welfare of a Child under Section 4304(a)(1) of the Crimes Code, 18 Pa. C.S. §4304(a)(1). It states:

> (a)(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense

---

[1] The Investigation/Assessment Outcome Reports identify the investigating worker by name, S.R.R. at 12b, 22b, and identify the police referral source by name, S.R.R. at 8b, 18b.

if he knowingly endangers the welfare of a child by violating a duty of care, protection or support.

Subsequently, CYS completed two Child Protective Services Investigative Reports and determined that Petitioner caused serious physical neglect of her two children by a repeated, prolonged, or egregious failure to supervise them. Bureau of Hearings and Appeals Adjudication, Finding of Fact No. 5. The Office of Children, Youth and Families (OCYF) mailed Petitioner notices that she was listed in the statewide database of child abuse as a perpetrator of indicated reports of child abuse against C.F. and Chl.F.

Section 6303(a) of the CPSL defines an "indicated report" as follows:

(1) Subject to paragraphs (2) and (3), a report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following:

   (i)  Available medical evidence.

   (ii)  The child protective service investigation.

   (iii)  An admission of the acts of abuse by the perpetrator.

23 Pa. C.S §6303(a)(1).

In relevant part, Section 6303(b.1) defines "child abuse" as follows:

The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

   (1) Causing bodily injury to a child through any recent act or failure to act.

\*    \*    \*

(7) Causing serious physical neglect of a child.

23 Pa. C.S. §6303(b.1). Section 6303(a) of the CPSL defines "serious physical neglect" as

> Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:
>
> (1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.
>
> (2) The failure to provide a child with adequate essentials of life, including food, shelter or medical care.

23 Pa. C.S. §6303(a). The OCYF notices of indicated reports advised Petitioner that the identified category of child abuse was "causing serious physical neglect" and the subcategory was "repeated, prolonged or egregious failure to supervise" for leaving the children home alone. Petitioner appealed the notices of indicated reports.[2]

Subsequently, on November 29, 2017, the Common Pleas Court granted a motion to admit Petitioner into an accelerated rehabilitative disposition program (ARD) for disposition of the two counts of Endangering the Welfare of a Child. Criminal docket, S.R.R. at 33b. Based on Petitioner's admission into ARD, CYS amended the indicated reports of child abuse to founded reports of child abuse, in accord with Section 6303 of the CPSL, 23 Pa. C.S. §6303.

---

[2] Section 6341(a) of the CPSL, 23 Pa. C.S. §6341(a), allows for amendment or expunction of information.

On December 18, 2017, the County Solicitor filed a Motion to Dismiss Petitioner's appeal from the indicated reports because the reports were amended from indicated to founded based on Petitioner's admission into ARD. Thereafter, Petitioner requested a hearing, asserting that the findings in the affidavit of probable cause do not meet the definition of child abuse and that an ARD disposition on charges of Endangering the Welfare of a Child does not provide a basis for a founded report of child abuse. *Specifically*, citing Section 6303(b.1) of the CPSL, Petitioner alleged that the facts supporting probable cause for the charges of Endangering the Welfare of a Child do not establish that Petitioner created an imminent risk of serious physical injury.

An administrative law judge (ALJ) of the Department of Human Services, Bureau of Hearings and Appeals (BHA) considered Petitioner's request "to overturn founded reports of child abuse." R.R. at 8a. The ALJ explained that Section 6303(b.1) *does not require* that a child suffer serious physical injury or that a perpetrator *create an imminent risk of serious physical injury*. Instead, under Section 6303(b.1), *causing serious physical neglect* of a child constitutes child abuse. R.R. at 12a. Further, the ALJ explained, "serious physical neglect" is defined in part as a repeated, prolonged, or *egregious failure to supervise a child* in a manner that is appropriate considering the child's developmental age and abilities, and that endangers a child's life or health or threatens the child's well-being. The ALJ noted that the criminal complaint stated that Petitioner left her 15-month-old children home alone for approximately seven hours and that the CYS investigative reports concluded that by doing so she caused serious physical neglect of C.F. and Chl.F. As set forth in investigative reports, the agency's investigations confirmed the relevant facts.

The ALJ determined that the identical actions that are described in the affidavit of probable cause and the CYS investigative reports "unequivocally meet the definition of child abuse. [Petitioner] failed to supervise two 15-month-old children for at least seven hours while [she] was drinking at a bar, constituting a prolonged and egregious failure to supervise that endangered the children's life, health and well-being." R.R. at 12a. Finally, the ALJ explained that the ARD disposition on charges of Endangering the Welfare of a Child provided a basis for a founded report of child abuse under Section 6303 of the CPSL because the reason for the acceptance "involves the same factual circumstances involved in the allegation of child abuse." *Id.*

The ALJ issued a decision on February 28, 2018, recommending that Petitioner's appeal be dismissed. R.R. at 7a. The ALJ's recommendation was adopted in its entirety by Final Administrative Action dated March 28, 2018.

**Issue on appeal**

On appeal to this Court, Petitioner argues that the record does not establish that "the ARD disposition produced a judicial finding concerning the *severity of any injuries or level of risk Petitioner created by her actions* because there is no record of the ARD proceeding." Petitioner's brief at 8 (emphasis added). She further contends that, without a record of the ARD proceeding, "there is no reliable way to determine if there has been an acceptance into ARD and [that] the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse." Petitioner's brief at 9. Simply, Petitioner argues that in the absence of a transcript of the ARD proceeding, the criteria for issuing a founded report set forth in Section 6303 of the CPSL were not established in this

case. Petitioner's argument specifically relies on a different definition of "child abuse" than CYS has consistently cited.

As to Petitioner's first argument, the ALJ already explained that the definition of "child abuse" in Section 6303(b.1) of the CPSL does not require a determination concerning the severity of injuries or the level of risk created by Petitioner's actions. As to her second contention, the criminal docket sufficiently demonstrates that Petitioner was accepted into ARD to resolve pending charges of Endangering the Welfare of a Child. S.R.R. at 31b-38b. Petitioner *has never challenged the accuracy of the documents reflecting* that she admittedly left her 15-month-old daughters alone in their cribs overnight. Petitioner's assertion that the *statutory criteria* for issuance of a founded report have not been met necessarily fails.[3] To the extent Petitioner raises the question, the remaining issue

---

[3] Indeed, Petitioner distills the essence of her **two pages of argument** as follows:

> Facts supporting an ARD disposition may change from the time of the filing of a criminal complaint and an ARD disposition. In fact, a defendant may be completely innocent of an allegation, but choose ARD disposition as a matter of expedience or as a way to avoid the risk of an unfair verdict.

> Respondent erred by relying entirely on information contained in a criminal complaint and affidavit of probable cause of a criminal complaint to support its determination. Petitioner should be granted [an] evidentiary hearing *to provide her version of the incident and to explain her reasons for entering the ARD program.*

Petitioner's brief at 9 (emphasis added). Petitioner's additional contention, that facts supporting an ARD disposition may change, entirely misses the mark. In this case, the statutory criteria for a founded report are Petitioner's acceptance into ARD involving "the same factual circumstances involved in the allegation of child abuse." 23 Pa. C.S. §6303(a). The language of the statute reflects that the criteria for a founded report involve *Petitioner's past actions, on May 7, 2017.* Past factual circumstances cannot be changed. Petitioner's reasons for subsequently choosing **(Footnote continued on next page…)**

is whether the provisions of the CPSL are sufficient to satisfy due process concerns. The Majority concludes that a hearing not afforded under the CPSL is required.

## J.G. and R.F. are distinguishable

Our decision in *J.G.* does not support this result.[4] To the contrary, in *J.G.,* where both parents were named in a founded report of child abuse, we sustained the mother's appeal and held that a founded report of abuse is appealable "*for the limited purpose* of determining whether or not the underlying adjudication

---

**(continued…)**

ARD disposition of the criminal charges are not relevant to establishing the specifics of her conduct, i.e., the "factual circumstances," on May 7, 2017.

Our Supreme Court has repeatedly cautioned us to avoid addressing constitutional issues whenever possible. Although Petitioner's meager argument makes no reference to the Administrative Agency Law, 2 Pa. C.S. §§501-508, 701-704, rights (constitutional or otherwise), or due process, the Majority implicitly concludes that the failure of Section 6341 to provide for a hearing to appeal a founded report is unconstitutional and amends the CPSL to require a hearing to support every founded report of child abuse.

[4] At the time *J.G.* was decided, "founded report" was defined as

> a child abuse report made pursuant to this chapter if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused, including the entry of a plea of guilty or *nolo contendere* or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse.

23 Pa. C.S. §6303, Historical and Statutory Notes. The provision now states that a founded report also can be based upon a finding of dependency; a finding of delinquency; acceptance into ARD; a consent decree entered in a juvenile proceeding; or a final protection from abuse order. The 2013 legislation also amended Section 6341 of the CPSL (relating to amendment or expunction) by adding Subsection (c.1) (founded reports).

supports a founded report *that the named perpetrator is responsible* for the abuse." *Id.* (emphasis added). Here, there is no confusion as to the identity of the person who left the two 15-month-old children alone in their cribs overnight.

In *J.G.*, this Court also stated, without elaboration, that a "founded report of child abuse *constitutes an adjudication* as it is a final determination [that] affects a named perpetrator's personal rights *by branding him or her as a child abuser* on a Statewide central register of child abuse." 795 A.2d at 1092 (emphasis added). We have often repeated that conclusory statement. However, a founded report does not decide disputed charges or facts. Rather, a founded report has always been *premised upon a prior adjudication*, or, as now amended, a voluntary disposition of charges. Consequently, it is more accurate to say that a founded report *is a reflection of an adjudication*, not an adjudication in and of itself.

Our decision in *R.F.* is likewise distinguishable. Therein, the founded report named a parent who pled *nolo contendere* to *child abuse* as a perpetrator of child *sexual* abuse. We held that the parent was entitled to a hearing to determine whether the plea itself established child sexual abuse. Here, however, and as explained by the ALJ, *Petitioner does not dispute* that *her entry into the ARD program and the founded report of child abuse were based on identical factual circumstances*: Petitioner's leaving her 15-month-old children alone for more than seven hours.

This case does not raise questions as to the identity of the perpetrator or to Petitioner's conduct on May 7, 2017. Because the facts in this appeal are completely dissimilar to the facts in *J.G.* and *R.F.*, I believe the Majority's reliance on these opinions is misplaced.

### *R. v. Department of Public Welfare*

In *R. v. Department of Public Welfare*, 636 A.2d 142 (Pa. 1994), our Supreme Court more thoroughly examined the impact of being named in an indicated report of child abuse on an individual's constitutionally protected right to reputation. The appellant in *R.* appealed this Court's decision affirming the denial of his motion to expunge an indicated report of child abuse. In relevant part, the appellant asserted that, because he was not permitted to be present when his daughter testified, he was denied his rights to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Sections 1 and 11 of Article I of the Pennsylvania Constitution.[5]

Relevant here, the Supreme Court addressed the appellant's assertions that the indicated report of child abuse posed a risk to his reputation. The Court first observed:

> [I]n Pennsylvania, reputation is an interest that is recognized and protected by our highest state law: our Constitution. Sections 1 and 11 of Article I make explicit reference to 'reputation,' providing the basis for this Court to regard it as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection.

*Id.* at 149. After recognizing that the appellant had a protected interest in his reputation, the Court assessed the extent to which he would be deprived of that interest by the indicated report. The Court noted that indicated reports of child

---

[5] The Supreme Court addressed three assertions of adverse impact raised by the appellant. The Court observed that Section 6344 of the CPSL, related to "clearances," does not implicate a liberty or property interest recognized under Pennsylvania law. Additionally, the Court noted that the appellant did not have a protectable property interest in any prospective employment opportunities.

abuse are recorded in a confidential statewide registry, and the identity of the perpetrator in such reports is revealed only in a limited set of situations. The Court reviewed some of the specific exceptions to confidentiality set forth in Section 6340(a) of the CPSL[6] and concluded:

> It is apparent from these legislatively imposed controls that R. is not being stigmatized in the eyes of the general public. To the contrary, his identity is disclosed to a small number of persons in a very narrow range of situations with the understanding that it will not be revealed to any unauthorized individuals. Therefore, any adverse effects on his reputation are very limited.

*Id.* at 149-50.

More recently, the Supreme Court affirmed those conclusions in *G.V. v. Department of Public Welfare*, 91 A.3d 667 (Pa. 2014).

> [In] *R.*, an appeal from a denial of expungement, this Court focused on the extent to which the information contained in an indicated report is readily available or accessible, and specifically on the circumstances under which R.'s identity could be revealed. We observed that Section 6340(a) of the [CPSL] provides that only a limited number of people in a limited set of situations have access to the confidential statewide Registry. We thus concluded that R. was not being stigmatized in the

---

[6] Section 6339 of the CPSL states that generally, reports of child abuse and other related information in the possession of the Department or a county agency shall be confidential. As emphasized by the Supreme Court in *R.*, limited exceptions to the general rule are identified in Section 6340(a), providing that reports shall only be made available to limited persons under specific circumstances, such as: (1) an authorized official of a child protective service in the course of official duties; (2) a physician examining or treating a child when the physician suspects child abuse; (3) a child's guardian *ad litem*; (4) a court of competent jurisdiction pursuant to a court order; and (5) law enforcement officials in the course of investigating cases of homicide, sexual abuse, sexual exploitation, or serious bodily injury. 23 Pa. C.S. §6340(a). I would add that the regulations at 55 Pa. Code §§3490.102 and 3490.126 provide civil sanctions and criminal penalties for breaching the confidentiality required by the CPSL.

eyes of the general public, and the adverse effects on his reputation were very limited.

Here, the Commonwealth Court did not hew to our extended analysis in *R.* pertaining to the statutory limitations on dissemination of the information contained in the Registry.

*Id.* at 672-73. The Court further explained that maintenance of the statewide central registry identifying perpetrators of child abuse fosters the Commonwealth's interests in preventing child abuse and protecting abused children from further injury. "This goal of protection of any potential victims of a perpetrator identified in an indicated [or founded] report" cannot be ignored. *Id.* at 674.

In a concurring opinion, Justice Saylor complains that the decision in *R.* was "overly dismissive" to the reputational concerns of persons whose names are entered in the child abuse registry. 91 A.3d at 675. Nevertheless, as set forth in these precedential majority decisions, the Supreme Court's analysis of the CPSL as implicating the right to privacy protected under the Pennsylvania Constitution applies equally here.

In light of our Supreme Court's more in-depth consideration of the consequences of being named a perpetrator of child abuse on the statewide registry, I conclude that placement on the statewide registry in a founded report of child abuse is not an inevitable deprivation of one's constitutional right to reputation. *G.V.*; *R.* Consequently, I would revisit this Court's implicit assumption to the contrary in *J.G.* and our continuing reliance thereon. I believe that the conclusory statement in *J.G.* is inconsistent with controlling authority and does not support a holding that a founded report under Section 6303 must be supported by an adjudication in every case. Further, as explained below, I believe

that the CPSL's criteria regarding indicated and founded reports provide adequate safeguards to protect an individual's right to reputation.

**ARD**

Because Petitioner's argument involves ARD proceedings, a brief review of Chapter 3 of the Rules of Criminal Procedure (Rules), which govern ARD, is provided. The Rules do not specify classes of offenses or offenders that are eligible for inclusion in ARD. Generally, the district attorney has the responsibility for determining which cases will be recommended for entry into ARD. *See Commonwealth v. Lutz*, 495 A.2d 928 (Pa. 1985); *Commonwealth v. Corrigan*, 992 A.2d 126 (Pa. Super. 2010). A request for inclusion into ARD may be made to the district attorney, the defendant, or an interested agency or institution. Pa.R.Crim.P. 310, comment.

After criminal proceedings are instituted, the Commonwealth attorney may move that the case be considered for ARD. Pa.R.Crim.P. 310. The Commonwealth attorney provides notice to the defendant and any victims of the offense(s) charged that he or she will present the ARD motion to a judge. Pa.R.Crim.P. 311.

The common pleas court judge holds a hearing on the motion for ARD in open court, during which "it is ascertained on the record whether the defendant understands" that: (1) acceptance into and satisfactory completion of the ARD program offers her an opportunity to earn a dismissal of the pending charges; and (2) failure to complete the program waives any applicable statute of limitations as well as the right to a speedy trial. Pa.R.Crim.P. 312. When the defendant agrees, the stenographer closes the record. Pa.R.Crim.P. 313(A). The judge then

hears the facts of the case, as well as any information the defendant wishes to present. Pa.R.Crim.P. 313(B). No statement or information provided by the defendant may be used against her in any criminal proceeding,[7] except in a prosecution based on the falsity of the information provided. *Id.*

If, after hearing the facts,[8] the judge believes that the case warrants ARD disposition, the judge orders the stenographer to reopen the record and states the conditions of the program. Pa.R.Crim.P. 313(C). The conditions imposed under the program "may be such as may be imposed with respect to probation after conviction of a crime . . . ."[9] Pa.R.Crim.P. 316(A). If the defendant indicates acceptance of the conditions and agrees to comply, the judge may grant the motion. Pa.R.Crim.P. 313(D). At that time, bail is terminated and any money or security deposit is returned. Pa.R.Crim.P. 313(E).

The period of an ARD program "shall not exceed two years." Pa.R.Crim.P. 316(B). Upon successful completion of the program, a defendant may move the court for an order dismissing the charges. Pa.R.Crim.P. 319. At that time, the judge also orders expungement of the defendant's arrest record. Pa.R.Crim.P. 320. Notably, then, the rehabilitative purpose of an ARD program is

---

[7] The phrase "or civil" was deleted from paragraph (B) in the 1989 revision of the ARD rules. Pa.R.Crim.P. 313, comment.

[8] The five-page questionnaire used to determine Petitioner's eligibility for ARD disposition of the criminal charges, accessed via the internet, specifically asks the applicant to briefly state why she committed the crime with which she was charged.

[9] The conditions of Petitioner's ARD include drug and alcohol evaluation; community service hours; attendance at retail theft school; and maintaining full-time employment. S.R.R. at 33b.

served by offering the defendant the possibility of a clean record if he or she successfully completes the program.

## Founded report

When *J.G.* was decided, the statutory predicate for a founded report of child abuse was "any judicial adjudication" based on a finding that a child who is a subject of the report has been abused. In other words, a founded report was not, itself, an adjudication of facts, but a consequence of facts previously decided in a judicial adjudication.

As amended in 2013, Section 6303(a) of the CPSL now states:

**"Founded report**." —A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:

  (1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse. The judicial adjudication may include any of the following:

    (i) The entry of a plea of guilty or *nolo contendere*.

    (ii) A finding of guilt to a criminal charge.

    (iii) A finding of dependency under 42 Pa. C.S. §6341 (relating to adjudication) if the court has entered a finding that a child who is the subject of the report has been abused.

    (iv) A finding of delinquency under 42 Pa. C.S. §6341 if the court has entered a finding that the child who is the subject of the report has been abused by the child who was found to be delinquent.

  (2) There has been an acceptance into an accelerated rehabilitative disposition program and the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse.

(3) There has been a consent decree entered in a juvenile proceeding under [Section 6340 of the Juvenile Act, 42 Pa. C.S. §6340], the decree involves the same factual circumstances involved in the allegation of child abuse and the terms and conditions of the consent decree include an acknowledgment, admission or finding that a child who is the subject of the report has been abused by the child who is alleged to be delinquent.

(4) A final protection from abuse order has been granted under section 6108 . . . .

23 Pa. C.S. §6303(a).

Thus, in addition to the judicial adjudications identified in subsections (1) and (4), a founded report will issue under subsections (2) and (3) based on a voluntary occurrence, participation in an ARD program, or a consent decree entered in a juvenile proceeding. The voluntary occurrences identified in subsections (2) and (3) as criteria for a founded report must involve the same factual circumstances involved in the allegation of child abuse, but they do not involve an adjudication. Each of these voluntary occurrences offers the individual an opportunity for rehabilitation and the expungement of her criminal records, under terms and conditions that balance the community's need for protection. In any event, a founded report always requires that the adjudication or voluntary predicate involves the same factual circumstances that are involved in the allegation of child abuse.

*Here, Petitioner does not argue that the factual circumstances are not the same,* but instead sets forth an irrelevant argument, that the facts do not establish the "*severity of any injuries or level of risk Petitioner created by her actions.*" Petitioner's brief at 8. Petitioner *does not assert* that the criminal charges disposed of by ARD were not based on facts evincing a "failure to supervise" as contemplated by Section 6303(a) of the CPSL. Because she does not

argue that the factual circumstances are not the same, *J.G.* and *R.F.* are materially distinguishable, and a hearing could serve no discernable purpose.

**Section 6341**

Section 6341 allows a hearing for amendment or expunction of information in limited circumstances.[10] For an indicated report, which may be

---

[10] In relevant part, Section 6341 states:

(a) General rule. — Notwithstanding section 6338.1 (relating to expunction of information of perpetrator who was under 18 years of age when child abuse was committed):

  (1) At any time, the secretary may amend or expunge any record in the Statewide database under this chapter upon good cause shown and notice to the appropriate subjects of the report. The request shall be in writing in a manner prescribed by the department. For purposes of this paragraph, good cause shall include, but is not limited to, the following:
    (i) Newly discovered evidence that an indicated report of child abuse is inaccurate or is being maintained in a manner inconsistent with this chapter.
    (ii) A determination that the perpetrator in an indicated report of abuse no longer represents a risk of child abuse and that no significant public purpose would be served by the continued listing of the person as a perpetrator in the Statewide database.

  (2) Any person named as a perpetrator . . . in an indicated report of child abuse may, within 90 days of being notified of the status of the report, request an administrative review by, or appeal and request a hearing before, the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter. . . .

*       *       *

**(Footnote continued on next page…)**

based on an investigation and does not require a prior adjudication, those circumstances include newly discovered evidence or evidence that the perpetrator no longer represents a risk of child abuse. 23 Pa. C.S. §6341(a)(1). The agency supports an indicated report of child abuse by way of substantial evidence.

For a founded report, which is based on a *prior judicial adjudication or a voluntary judicial disposition*, the circumstances constituting good cause to amend or expunge a report are a court order reflecting that the adjudication that formed the basis of the founded report has been reversed or vacated. 23 Pa. C.S. §6341(c.1). When a founded report is premised on entry in ARD, the requisite order becomes available upon successful completion of the program.

---

**(continued…)**

> (c.1) Founded reports**.** —  A person named as a perpetrator in a founded report of child abuse must provide to the department a court order indicating that the underlying adjudication that formed the basis of the founded report has been reversed or vacated.
>
> (c.2) Hearing**.** —  A person making an appeal under subsection (a)(2) or (c) shall have the right to a timely hearing to determine the merits of the appeal. A hearing shall be scheduled according to the following procedures:
> * * *
>  (4)  The department or county agency shall provide a person making an appeal with evidence gathered during the child abuse investigation within its possession that is relevant to the child abuse determination, subject to sections 6339 (relating to confidentiality of reports) and 6340 (relating to release of information in confidential reports).
>
>  (5)  The department or county agency shall bear the burden of proving by substantial evidence that the report should remain categorized as an indicated report.

23 Pa. C.S. §6341.

In my view, the CPSL affords different but adequate due process for challenging both indicated and founded reports.

**Conclusion**

Consistent with their distinct underlying purposes, the Rules governing ARD and the provisions of the CPSL allow for different consequences for Petitioner's leaving her 15-month-old daughters alone and unsupervised overnight. ARD offers Petitioner an opportunity to avoid a criminal conviction based on her admitted conduct and start over with a "clean slate." The lack of a transcript of the ARD hearing is required by the Rules and serves to benefit defendants. The CPSL serves different purposes, including the swift and competent investigation of reported child abuse and "providing protection for children from further abuse." Section 6302 of the CPSL, 23 Pa. C.S. §6302. In furtherance of those purposes, the CPSL provides that judicial adjudications and voluntary dispositions of criminal charges based on facts establishing child abuse support the issuance of a founded report. By now recognizing that persons can avoid adjudication of criminal charges by way of ARD or consent decree, the legislature has arguably filled a preexisting statutory gap.

Our Supreme Court has recognized that harm to one's constitutionally protected right to reputation is not, as suggested by *J.G.*, an inevitable result of being named in a founded report. Moreover, an individual who does not contest that the adjudication or voluntary disposition "involves the same factual circumstances" involved in the allegation of child abuse does not fall within the narrow application of *J.G.* or *R.F.*

MHW - 19

The Majority concludes that Petitioner "is entitled to a hearing on whether CYS correctly amended the indicated reports of child abuse to make them founded reports." Majority op. at 13. Because Petitioner *does not argue* that her ARD disposition involves different factual circumstances than are involved in the allegation of child abuse, she raises no issue necessitating a hearing under the CPSL.

Based on the foregoing, I would clarify our analysis in *J.G.,* and I would affirm the final order of the BHA.

_____
MICHAEL H. WOJCIK, Judge