J-S08016-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN WRIGHT | : | |
| | : | |
| Appellant | : | No. 776 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 7, 2011
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008384-2010

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN WRIGHT | : | |
| | : | |
| Appellant | : | No. 777 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 7, 2011
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013968-2010

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY McCAFFERY, J.:                    FILED MARCH 30, 2020

Sean Wright (Appellant) appeals from the judgment of sentence entered on September 7, 2011, in the Allegheny County Court of Common Pleas in two cases, CP-020-CR-0008384-2010 (8384) and CP-02-CR-0013968-2010 (13968). The trial court sentenced Appellant to an aggregate term of 50 to 100 years' incarceration, following his jury conviction of two counts of

attempted homicide[1] and other offenses. Appellant challenges the sufficiency of the evidence supporting his convictions of attempted homicide, arguing he acted in self-defense, and the weight of the evidence. We affirm.

The evidence at trial established the following. In the late morning of June 9, 2011 a witness was walking in the Friendship neighborhood of Pittsburgh, Pennsylvania. The witness noticed a Lincoln Navigator being driven at a high rate of speed and in a reckless manner, swerving around other cars and traveling in the opposite lane of traffic on Friendship Ave. N.T., 6/1/11, at 55.[2] When the vehicle approached the witness, the witness threw his arms in the air. In response, Appellant, the driver of the vehicle, smiled at the witness, put his hand through his sunroof and waved a gun in the air. Id. at 55-56. The witness reported the incident to police.

Shortly thereafter, several marked police units located Appellant and activated lights and sirens. Appellant refused to stop his vehicle, and instead sped off. Police pursuit commenced in the Garfield section of the city and proceeded through the Liberty section. At a major intersection, civilian vehicles blocked Appellant's vehicle while Pittsburgh Police Officer Howard McQuillan's vehicle stopped directly behind Appellant. Appellant initially

_____

[1] 18 Pa.C.S. §§ 901(a), 2501(a).

[2] The jury trial transcript appears in two volumes: one dated June 1 through June 3, 2011, and the other dated June 6 through June 7, 2011, but it is continuously paginated. For convenience, we refer to each volume as, respectively, N.T., 6/1/11, and N.T., 6/6/11.

attempted to force his way through the civilian vehicles, but was unable to do so. Instead, he drove over a small concrete barrier that divided the opposite lanes of traffic. N.T., 6/1/11, at 83. Immediately, Appellant was met by police on the opposite side. Appellant then reversed his car, smashed into Officer McQuillan's vehicle, and pushed it approximately six feet back. Officer McQuillan was able to avoid injury by exiting the marked patrol car prior to impact. Appellant maneuvered out of the intersection and sped away with police again in pursuit. Id. at 74-75.

The pursuit continued through several Pittsburgh neighborhoods and other jurisdictions, including: East Liberty, Shadyside, Homewood, East Hills, Wilkinsburg, Penn Hills, Edgewood, and Swissvale. During the ongoing chase, Appellant drove through a city park and struck Officer McQuillan's vehicle again while attempting to elude police. N.T., 6/1/11, at 75-77. Appellant later drove through a gas station and rammed into the vehicle of Pittsburgh Police homicide detectives, Cindy Smith and Christine Williams, pushing their vehicle backwards into an intersection. Throughout the ordeal, Appellant unpredictably turned around in the middle of the street and charged police vehicles head on, causing them to move out of the way. Police tried to deploy spike strips to stop Appellant, but his erratic and high speed driving allowed him to escape. Id. at 360. At one location, Appellant sped through parking lots and onto a sidewalk in front of a pizza shop and bus stop.

Later, Appellant became stuck in traffic at another major intersection. Pittsburgh Police Detectives Vonzale Boose and Brian Johnson, who were part of the pursuit, exited their vehicle, approached Appellant and ordered that he show his hands. Appellant chose to ram the vehicles in front of and behind him until he created enough room to speed away. Appellant cut through a shopping center then to a major roadway where he continued on Route 22 toward Monroeville. N.T, 6/1/11, at 267, 330. When Appellant reached the end of Allegheny County, Monroeville Police, who had monitored the pursuit, deployed spike strips. Appellant, again, evaded them by turning into a strip mall attempting to escape through a delivery road.

Two Pittsburgh Police vehicles, one driven by Lieutenant Richard Pritchard and the other by Detectives Boose and Johnson veered to position their vehicles at the end of the delivery road in an attempt to cut off means of escape. Lieutenant Pritchard positioned his marked vehicle at the far end of the delivery road, while Detectives Boose and Johnson parked their marked vehicle fifteen to twenty feet behind Pritchard's. N.T., 6/1/11, at 227, 268, 330-32. Despite having enough room to pass on either side of Lieutenant Pritchard's vehicle, Appellant accelerated, steering directly toward Lieutenant Pritchard, who was standing outside his vehicle. Appellant smashed Lieutenant Pritchard with such force that Lieutenant Pritchard was thrown six to eight feet into the air, landing on the rear trunk of his vehicle and then rolling to the ground, seriously injured. Id. at 152-53, 229-30, 269, 305,

335, 382. Appellant later admitted to a nurse and Pittsburgh police officer, "they were going to shoot me so I had to run them over." Id. at 126.

After crushing Lt. Pritchard and with vehicle parts "falling off," Appellant steered toward Detectives Boose and Johnson's vehicle. While Detective Boose was already outside of the vehicle, Detective Johnson remained inside bracing for impact because he feared that if he tried to exit Appellant would hit him head on and kill him. The force of the impact caused the detectives' vehicle to violently spin 180 degrees. Upon impact, Detective Johnson explained, "[t]hings went dark," as he toppled from his vehicle seriously injured. N.T., 6/1/11, at 233, 268-71, 382. Appellant then took aim at another law enforcement officer, Deputy Davin, who arrived on the scene in a marked sheriff's vehicle. Appellant drove his vehicle directly into the front driver side of the deputy's vehicle, causing the window to explode in the deputy's face. Id. at 382, 391.

As a result, Appellant's car became disabled. Officers converged on the vehicle and ordered Appellant to show his hands. Appellant ignored repeated commands while attempting to locate his firearm. N.T., 6/1/11, at 77, 234-35. Police then tasered Appellant and sent in a canine officer to subdue him.

The trial court summarized the officer's respective injuries:

Lieutenant Pritchard suffered injuries as follows: (1) his kneecap was torn off of his leg; (2) all of the ligaments in his leg, except for his hamstring, were torn; (3) some part of [Appellant's] vehicle had torn a portion of his shin out; (4) his quadriceps were torn off of the bone which caused complete lack of control of his leg for several months; (5) multiple stitches and embedded glass

in his elbow from shattering the window of his vehicle upon being hit by [Appellant's] vehicle; and (6) severe bilateral trauma from his waist to his ankles. He endured multiple surgeries to repair and reattach his quadriceps and knee, as well as ACL reconstructive surgery. [N.T., 6/1/11, at 337].

Detective Johnson suffered the following injuries: (1) his right hip was shattered into six to seven pieces and three plates and eleven screws were inserted into that hip; (2) nerve damage to that leg causing his entire leg to cramp twenty-four hours a day, seven days a week; (3) scarring that runs across his entirety of his right buttocks and down his right leg.; (4) wearing a brace that extends from his calf down to his foot; and (5) inability to determine where his right foot is when he attempts to walk as a result of the nerve damage, which also necessitates the use of a cane or walker in order to ambulate. [N.T., 6/1/11, at 272-83]. Detective Johnson underwent several surgeries and spent a month in the hospital, and he remained in intensive therapy for leg and nerve damage at the time of trial. [Id. at 278-83].

Deputy Davin suffered: (1) bruised ribs; (2) a bruised knee; (3) multiple cuts from the exploding glass; (4) reoccurring headaches; and (5) bruising over the entirety of the left side of his body. [N.T., 6/1/11, at 388].

Trial Ct. Op., 2/8/13, at 10-11.

On June 9, 2010 Appellant was charged under trial docket 8384 with seven counts each of attempted homicide and aggravated assault;[3] and one count each of carrying a firearm without a license, and fleeing or attempting to elude an officer.[4] At docket 13968, Appellant was separately charged with

_____

[3] 18 Pa.C.S. § 2702(a)(2), (c).

[4] 18 Pa.C.S. § 6106(a)(1); 75 Pa.C.S. § 3733(a).

six counts of recklessly endangering another person (REAP),[5] as well Motor Vehicle Code offenses. [6]

Appellant proceeded to a jury trial commencing June 1, 2011. The Commonwealth presented the evidence as summarized above. Appellant did not testify during his trial, but presented the testimony of his mother, Shawnette Wright, and photographs of multiple vehicles. Appellant also presented photographs of his Lincoln Navigator, showing what he asserts is a bullet hole. On June 7th, the jury found Appellant guilty of two counts attempted homicide, seven counts of aggravated assault, carrying a firearm without a license, and fleeing or attempting to elude police officers at docket 8384. At docket 13968, the jury convicted Appellant of all six counts of REAP and one count of accidents involving damage to attended vehicles.[7]

On September 7, 2011, the Honorable Edward J. Borkowski sentenced Appellant at docket 8384 to an aggregate sentence of 50 to 100 years' incarceration. At docket 13968, Judge Borkowski sentenced Appellant to an aggregate sentence of one to two years' incarceration to run concurrent with Appellant's sentence at docket 8384.

_____

[5] 18 Pa.C.S. § 2705.

[6] 18 Pa.C.S. §§ 3743, 3112(a), 3703, 3736(a).

[7] 18 Pa.C.S. § 3743.

On Monday, September 19, 2011, Appellant filed timely post–sentence motions.[8] The court denied these post-sentence motions on January 23, 2012. Appellant filed a notice of appeal on February 21, 2012. On May 13, 2013, Paul Gettleman, Esquire entered his appearance as Appellant's counsel and filed a brief on Appellant's behalf. On November 18, 2013, this Court held that the issues raised by Appellant were waived due to a deficient Pa.R.A.P. 1925(b) statement and non-compliance with Pa.R.A.P. 2119(a) and/or (b). See Commonwealth v. Wright, 207 WDA 2012 (unpub. memo.) (Pa. Super. Nov. 19,2013).

On December 18, 2014, Appellant filed a pro se petition under the Post Conviction Collateral Relief Act[9] (PCRA) at dockets 8384 and 13968. The trial court appointed, in succession, two attorneys to represent Appellant, but both were permitted to withdraw representation.

On April 2, 2018, Judge Borkowski recused himself from further consideration of this case and it was transferred to the Honorable Thomas E. Flaherty. See Recusal H'ring, 4/2/18, at 1-3. On August 24, 2018, the trial court appointed current counsel to represent Appellant. On February 5, 2019, Appellant filed an amended PCRA petition requesting, inter alia, reinstatement

---

[8] The Pa.R.Crim.P. 720(A)(1) ten-day period to file a post-sentence motion fell on Saturday, September 17, 2011. Thus, Appellant had until Monday the 19th to timely file. See 1 Pa.C.S § 1908.

[9] 42 Pa.C.S. §§ 9541-9546.

of his post-sentence and direct appeal rights. On March 11, the court reinstated Appellant's post-sentence and direct appeal rights nunc pro tunc.

On March 14, 2019, Appellant filed a post-sentence motion raising the issues in the instant matter, which the trial court denied on May 7th. On May 21, 2019, Appellant filed a separate notice of appeal at each docket, 8384 and 13968,[10] as well as a single Pa.R.A.P 1925(b) statement. On May 31, 2019, the trial court, sua sponte, consolidated the appeals in this matter pursuant to Pa.R.A.P. 513.

Appellant presents three issues for our review:

1. Whether there was insufficient evidence to support the element of intent to kill regarding the offenses of Criminal Attempt (Homicide) at Counts 1 and 3 at [8384]?

2. Whether the Commonwealth failed to disprove beyond a reasonable doubt that [Appellant] was not acting in self-defense relative to the offenses of Criminal Attempt (Homicide) and Aggravated Assault of which [Appellant] was convicted at Counts 1, 2, 3 and 4 at [8384] where, at the time of the commission of those offenses, the victims — Lt. Richard Pritchard and Det. Brian Johnson — had their firearms drawn as [Appellant] approached them and [Appellant's] vehicle had one or more bullet holes therein indicating one or more officers had shot at and used deadly force toward [Appellant] causing him to reasonably believe he was in imminent danger of death or sustaining serious bodily injury such that [Appellant] needed to use deadly force to protect himself from those officers/victims?

3. Whether the convictions for Criminal Attempt (Homicide) at Counts 1 and 3 at [8384] are against the weight of the evidence with respect to the element of intent to kill?

_____

[10] See Commonwealth v. Walker, 185 A.3d 969, 977 (Pa. 2018) (when single order resolves issues arising in more than one lower court docket, separate notices of appeal must be filed).

Appellant's Brief at 7.

As Appellant's claims overlap, we address them together. In his first issue on appeal, Appellant contends the evidence was insufficient to sustain his convictions of attempted homicide. Appellant argues that throughout the pursuit, multiple officers had guns pointed at him indicating an intent to shoot and kill him. Appellant states he told a nurse and one officer that because he was faced with deadly force, he "had to run them over." Appellant's Brief at 18. Appellant avers that bullet holes in his vehicle prove that police shot at him. Appellant also contends that while attempting to escape, he struck multiple vehicles, but was only charged with attempted homicide of some officers.

In his second issue, Appellant claims his actions were justified under a theory of self-defense. Again, Appellant cites the evidence of guns aimed at him and bullet holes in his vehicle. Appellant avers that his actions were justified because police confronted him with deadly force when Lieutenant Pritchard and Detective Johnson had their firearms drawn and fired shots at Appellant. Appellant argues the Commonwealth failed to disprove his theory of self-defense beyond a reasonable doubt, and thus his convictions of attempted homicide and aggravated assault should be vacated.

Lastly, Appellant contends that his convictions for attempted homicide are against the weight of the evidence, where there was no evidence showing an intent to kill. Appellant avers that while no officer admitted to firing a

weapon during the incident, the evidence shows his vehicle was struck with two bullets, thereby negating any finding that he acted with intent to kill. N.T., 6/6/11, at 606.

Our standard of review is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

Commonwealth v. Walker, 139 A.3d 225, 229 (Pa. Super. 2016) (citations omitted); see Commonwealth v. Smith, 97 A.3d 782, 788 (Pa. Super 2014) (explaining it is up to fact finder to reject or accept all, part or none of the testimony of any witness).

This Court has stated:

> "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." Our Supreme Court has explained that "appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Stated another way, and as the trial court noted, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'"

Commonwealth v. Sullivan, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citations omitted).

Pursuant to Section 901 of the Pennsylvania Crimes Code, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Further, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501(a).

> [A]ttempted murder is composed of two primary elements: the mens rea element of the offense is specific intent to kill, which is identical to the mens rea element of murder in the first degree. The actus reus element of the offense is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing

Commonwealth v. Predmore, 199 A.3d 925, 929 (Pa. Super. 2018) (en banc) (citations omitted), appeal denied, 208 A.3d 459 (Pa. 2019).

"A conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." Predmore, 199 A.3d at 929 (citation omitted). "[S]pecific intent [to kill] may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." Commonwealth v. Cannavo, 199 A.3d 1282, 1292 (Pa. Super. 2018), appeal denied, 217 A.3d 180 (Pa. 2019). A deadly weapon is defined in part as "any device or instrumentality which, in the manner in which

it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. § 2301. "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. A sport utility vehicle (SUV) can constitute a deadly weapon when operated in a certain manner. See Commonwealth v. Solomon, 151 A.3d 672, 678 (Pa. Super. 2016) (holding SUV became a deadly weapon when appellant drove it in reverse through an eight-foot-wide opening directly at a person who was standing less than fifteen feet behind him).

Here, Appellant claims that there is insufficient evidence to support the element of specific intent to kill regarding the offense of attempted homicide. Thus, Appellant only challenges the mens rea element of his crimes.

In addressing the sufficiency claim, the trial court reasoned:

The facts presented in this matter clearly established that [Appellant] used his Lincoln Navigator as a deadly weapon against Lieutenant Pritchard and Detective Johnson. As [Appellant] rounded the bend behind the Murrysville Shopping Plaza, he intentionally drove his vehicle toward Lieutenant Pritchard and accelerated. He first struck Lieutenant Pritchard causing him to fly 6 to 7 feet into the air before landing on his face on the trunk of the vehicle. He then drove his truck directly toward Detective Johnson, who quickly jumped back into his vehicle immediately before Defendant struck it causing it to spin 180°. [Appellant's] use of his vehicle in this regard can be used to infer specific intent to kill. Therefore, there was sufficient evidence from which the jury could find [Appellant] guilty of criminal attempt homicide.

Trial Ct. Op., 9/12/19, at 4.

The injuries sustained by the brave officers clearly meet the threshold and definitions of serious bodily injury. The evidence elicited at trial, when viewed in the light most favorable to the Commonwealth, as verdict winner, demonstrates Appellant's specific intent to kill Lieutenant Pritchard and Detective Johnson. Appellant, when confronting the officers attempting to cutoff his escape, chose to accelerate his Lincoln Navigator directly towards them. Appellant's SUV smashed into the law enforcement officers causing catastrophic and life threatening injuries. See Predmore, 199 A.3d at 929; Solomon, 151 A.3d at 678.

In his second issue, Appellant challenges the sufficiency of the evidence for his convictions of aggravated assault and attempted homicide under a theory of self-defense.

Pursuant to Section 2702(a)(2) of the Crimes Code, "A person is guilty of aggravated assault if he: attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers . . . while in the performance of duty." 18 Pa.C.S. § 2702(a)(2). Police officers are among the persons enumerated in Section 2702(c). 18 Pa.C.S. § 2702(c)(1).

Under a theory of self-defense, "[i]f the defendant properly raises 'self-defense under Section 505 of the Pennsylvania Crimes Code,[11] the burden is

_____

[11] Section 505 of the Pennsylvania Crimes Code details the allowance and limitations of the use of force upon another person when the actor believes that such force is immediately necessary to protect himself. 18 Pa.C.S. § 505.

- 14 -

on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.'" Commonwealth v. Smith, 97 A.3d 782, 787 (Pa. Super 2014) (citations omitted).

> While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.
>
> * * *
>
> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence.

Id. at 787; see also 18 Pa.C.S. § 505(b)(2)(i)-(ii). Further, "a fact finder is not required to believe the testimony of the defendant who raises the claim." Id. at 788.

Here the trial court reasoned:

Judge Borkowski found that there was not sufficient evidence presented that placed the issue before the jury. [N.T., 6/6/11, at 579]. Further, the record is devoid of any evidence that any police officer discharged a firearm or confronted [Appellant] with deadly force. All evidence presented shows that Lieutenant Pritchard was struck by [Appellant's] Lincoln Navigator before he could raise his rifle and aim it at [Appellant]. Further, there was no evidence that Detective Johnson had pointed his firearm toward [Appellant]. Lastly, [Appellant] was clearly not "free from fault in provoking or

- 15 -

continuing the difficulty which resulted in the use of deadly force." Id. As such, the justification of self-defense was not properly placed before the jury, and the Commonwealth was not required to disprove self-defense beyond a reasonable doubt.

Trial Ct. Op., 9/12/19, at 5.

The jury, as finder of fact, was free to believe the Commonwealth disproved the theory of self-defense beyond a reasonable doubt. See Smith, 97 A.3d at 787. The evidence presented at trial supports a finding that Appellant should have stopped when he noticed marked police vehicles behind him with lights and sirens activated. See N.T., 6/1/11, at 66-67. Instead, Appellant chose to disregard a lawfully initiated police stop to instigate a high-speed pursuit through multiple residential neighborhoods in Allegheny County. Appellant's conduct clearly and unequivocally risked catastrophe and placed civilians and members of the law enforcement community directly in the path of a several thousand-pound vehicle as it hurtled through traffic in residential communities. Under what circumstances Appellant believed he was justified in initiating the latent catastrophe is lost on this Court and the record is devoid of any such facts. To the contrary, the evidence shows Appellant provoked the encounter, escalated the situation and caused the pursuit, while committing multiple assaults along the route. Appellant was free to simply stop his vehicle at any juncture.

Finally, Appellant challenges the weight of the evidence supporting his convictions for attempted homicide. Appellant claims that evidence presented at trial showed his vehicle had two bullet holes in it. N.T., 6/6/11, at 606.

In reviewing a challenge to the weight of the evidence supporting a conviction our review is limited to the trial court's exercise of discretion. Commonwealth v. Roane, 204 A.3d 1049, 1055 (Pa. 2013).

> A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility. We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

Id. (citations and quotation marks omitted).

Appellant avers that while no officer admitted to firing a weapon during the incident, the bullet holes coupled with the evidence of police with weapons drawn weighs heavily against a finding that Appellant acted with the intent to kill.

> The trial court addressed Appellant's weight claim as follows:

> [T]here were no facts that were clearly of a greater weight that ignoring them denied [Appellant] justice. The evidence presented at trial overwhelmingly established that [Appellant] drove his vehicle toward Lieutenant Pritchard and Detective Johnson with the intent to kill them. The verdict was just and does not shock one's sense of justice. As such, [Appellant's] weight of the evidence challenge must fail.

Trial Ct. Op., 9/12/19, at 6.

Appellant fails to establish an abuse of discretion by the trial court. See Roane, 204 A.3d at 1055. In fact, the proffered evidence offers no insight

into Appellant's intent.  Further, nothing about the jury's verdict sways the conscious of this Court.  Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2020