**[J-48-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| J.F., | : | No. 72 MAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court dated March |
| | : | 7, 2019 at No. 462 C.D. 2018 |
| v. | : | Reversing the Order of the |
| | : | Department of Human Services, |
| | : | Bureau of Hearings and Appeals, |
| DEPARTMENT OF HUMAN SERVICES, | : | dated March 28, 2018 at Nos. 021- |
| | : | 17-0824 and 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 and |
| Appellant | : | Remanding for hearing. |
| | : | |
| | : | ARGUED:  May 21, 2020 |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED:  February 17, 2021**

This appeal involves a founded report of child abuse, in which the "founded" designation resulted from the identified perpetrator's entry into an accelerated rehabilitative disposition (ARD) program with regard to criminal charges initiated for the same incident, as is authorized by the Child Protective Service Law (CPSL), 23 Pa.C.S. §§6301-6387. We granted discretionary review to determine whether such a perpetrator, seeking to challenge the founded report, is entitled an administrative hearing. For the following reasons, we affirm the Commonwealth Court's decision granting an administrative hearing.

**I.  Legal Background**

We begin with a brief review of the requirements and consequences of the statutory and rule-based underpinnings of the proceedings in the lower tribunals.

## A. Child Protective Service Law

Under the CPSL, "[t]he term 'child abuse' shall mean intentionally, knowingly or recklessly doing" any of an express list of ten forms of conduct including, *inter alia*, "[c]ausing bodily injury to a child through any recent act or failure to act[,]" "[c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act[,]" and, as was alleged in this case, "[c]ausing serious physical neglect of a child." 23 Pa.C.S. §6303(b.1)(1),(5),(7). Section 6303 further defines "serious physical neglect" as:

> Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:
>
> (1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.
>
> (2) The failure to provide a child with adequate essentials of life, including food, shelter or medical care."

*Id.* §6303(a) (definition of "serious physical neglect").

Upon completion of an investigation of a report of child abuse, the Department of Human Services (DHS) or its designated county children and youth agency (county agency) categorizes the investigated report as "indicated," "founded," or "unfounded." *Id.* §6368(n)(1). A report of suspected child abuse is "unfounded" if the report cannot be either indicated or founded. *Id.* §6303(a) (definition of "unfounded report"). An "indicated" report is one wherein the determination relies on DHS's or the county agency's own assessment that their investigation revealed "substantial evidence of the alleged abuse by a perpetrator exists based on" available medical records, the child protective services

investigation, or an "admission of the acts of abuse by the perpetrator." *Id.* (definition of

"indicated report"). A report is "founded" as a result of a determination or disposition made

by a judicial authority, external to DHS, but in reliance on the same factual circumstances

involved in the allegation of child abuse. *Id.* (definition of "founded report"). The CPSL

provides the following exhaustive list of situations in which a disposition external to DHS

may serve as a basis for a founded report:

> (1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse. The judicial adjudication may include any of the following:
>
>> (i) The entry of a plea of guilty or nolo contendere.
>>
>> (ii) A finding of guilt to a criminal charge.
>>
>> (iii) A finding of dependency under 42 Pa.C.S. §6341 (relating to adjudication) if the court has entered a finding that a child who is the subject of the report has been abused.
>>
>> (iv) A finding of delinquency under 42 Pa.C.S. §6341 if the court has entered a finding that the child who is the subject of the report has been abused by the child who was found to be delinquent.
>
> **(2) There has been an acceptance into an accelerated rehabilitative disposition program and the reason for the acceptance involves the same factual circumstances involved in the allegation of child abuse.**
>
> (3) There has been a consent decree entered in a juvenile proceeding under 42 Pa.C.S. Ch. 63 (relating to juvenile matters), the decree involves the same factual circumstances involved in the allegation of child abuse and the terms and conditions of the consent decree include an acknowledgment, admission or finding that a child who is the subject of the report has been abused by the child who is alleged to be delinquent.
>
> (4) A final protection from abuse order has been granted under section 6108 (relating to relief), when the child who is a subject of the report is one of the individuals protected under the protection from abuse order and:
>
>> (i) only one individual is charged with the abuse in the protection from abuse action;
>>
>> (ii) only that individual defends against the charge;
>>
>> (iii) the adjudication involves the same factual circumstances involved in the allegation of child abuse; and

(iv) the protection from abuse adjudication finds that the child abuse occurred.

*Id.* (emphasis added).

When a report of child abuse is substantiated as either indicated or founded, or amended from indicated or founded, the named perpetrator is provided with notice of the status, including the effect of a substantiated report upon future employment opportunities involving children, and the individual's name is added to the statewide child abuse database where it may remain indefinitely. *Id.* §§6331, 6338(a), 6368(f). A stated purpose of the statewide registry is to protect children from future abuse by the named perpetrator; consequently, the individual is subject to restrictions on certain interactions with children, including prohibitions on certain forms of housing, employment, and volunteer activities, including at schools and childcare facilities. *See id.* §§6302, 6344, 6344.1, 6344.2.

With respect to an individual's right to appeal a child abuse determination, Section 6341 of the CPSL, titled "Amendment or expunction of information" provides that "[a]ny person named as a perpetrator . . . in an **indicated report** of child abuse" may either "request an administrative review by, or appeal and request a hearing before, the [DHS] secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with [the CPSL]." *Id.* §6341(a)(2) (emphasis added). If a request for an administrative review is refused, the named perpetrator maintains the right to appeal and request a hearing. *Id.* §6341(c). The CPSL prescribes that anyone "making an appeal under subsection (a)(2) or (c) [relating to "an indicated report"] shall have the right to a timely hearing to determine the merits of the appeal." *Id.* §6341(c.2). Regarding founded reports, Section 6341 provides only that "[a] person named as a perpetrator in a founded report of child abuse must provide to the department a court order indicating that the underlying adjudication that formed the basis of the founded report has been reversed or vacated." *Id.* §6341(c.1). Section 6341 is

otherwise silent as to how a named perpetrator might challenge a founded report, seek administrative review, or request a hearing on the determination. *See id.* 6341.

## B. Accelerated Rehabilitative Disposition

ARD is a pretrial disposition of certain cases, governed primarily by Chapter 3 of the Pennsylvania Rules of Criminal Procedure, which suspends formal criminal proceedings before conviction and provides the accused with certain rehabilitative conditions, the completion of which results in the dismissal of the pending criminal charges and a clean record for the defendant. *See* Pa.R.Crim.P. 314-319. Upon initiation of criminal proceedings, a defendant may request the district attorney for inclusion into an ARD. *Id.* 310. If the district attorney agrees and so moves, a hearing on the motion will be held in open court, wherein it is "ascertained on the record whether the defendant understands that: (1) acceptance into and satisfactory completion of the [ARD] program offers the defendant an opportunity to earn a dismissal of the pending charges;" and (2) failure to complete the program waives any applicable statute of limitations as well as the right to a speedy trial. *Id.* 312. If the defendant agrees, "the stenographer shall close the record." *Id.* 313(A). The judge then hears the facts presented by the district attorney, and any information the defendant and victim choose to present; with narrow exception, the defendant's statements cannot be used against her. *Id.* 313(B). After hearing the facts of the case and the circumstances of the defendant, if the judge believes they warrant accelerated rehabilitative disposition, "the judge shall order the stenographer to reopen the record and shall state to the parties the conditions of the program[]" otherwise, the case proceeds on the charges. *Id.* at 313(C). Once the record is reopened, the defendant must state whether she accepts the conditions and agrees to comply; if she agrees, the judge may grant the motion for ARD, enter an appropriate order both "deferring adjudication" as set forth in Rules 314 and 315, and imposing conditions, not to exceed

a two-year period, as set forth in Rule 316. *Id.* 313(D)-316. Upon satisfactory completion of the program, a defendant may move the court for an order dismissing the charges, and if the motion is granted, the judge also enters an expungement order of the defendant's arrest record. *Id.* 320. However, if the defendant violates the conditions, the program may be terminated, in which case the case moves forward on the charges. *Id.* 318. Orders granting, denying, or terminating ARD are generally considered interlocutory and therefore not appealable until final resolution of the charges. *See*, *e.g.*, *Commonwealth v. Horn*, 172 A.3d 1133, 1137 (Pa. Super. 2017) ("Given the unique nature of an order that accepts a defendant into a ARD program, this [c]ourt has held that '[a]cceptance of ARD is an interlocutory matter and consequently is not appealable.'"), *quoting Commonwealth v. Getz*, 598 A.2d 1309, 1310 (Pa. Super. 1991).

## II. Factual and Procedural Background

In the case presently before the Court, on July 6, 2017, the county agency filed two identical indicated reports (CPS reports) identifying J.F. as a perpetrator of abuse of her fifteen-month-old twin children.[1] Child Protective Services Investigation/Assessment Outcome Reports at 7-9 (R.R. at 92a-94a, 102a-104a). According to the CPS reports, on May 7, 2017, J.F. left the children alone in her home from approximately 12:00 a.m. until 7:30 a.m. *Id.* At 2:00 a.m., police responding to a report of public drunkenness located J.F., who was semi-conscious, and escorted her to an emergency room. *Id.* At about 6:30 a.m., law enforcement received a call requesting a check on the unattended children. *Id.* The children's father met police officers at the home at approximately 7:30 a.m., where they found the children, still unattended, but sleeping in their cribs. *Id.* When interviewed by police, and subsequently by the county agency, J.F. disclosed that she left the children

---

[1] The two reports were identical except for the name of the child.

at home then went to a bar and consumed alcohol; specifically, the CPS reports state, "Mother admitted to leaving [the children] home alone while she went to the bar to drink . . . . Agency will indicate the case because Mother disclose[d] to the [p]olice on 5/8/17 and again to the [a]gency on 5/22/17." *Id.* The CPS reports note J.F. was also charged with two counts of child endangerment, *see* 18 Pa.C.S. §4304(a)(1),[2] for the same incident. *Id.* The county agency's stated basis under the CPSL for indicating the reports was "causing serious physical neglect of a child," and more specifically, "repeated, prolonged, or egregious failure to supervise." *Id.* at 7 (R.R. at 92a, 102a).

DHS sent J.F. a notice of the reports' status along with a copy of the indicated reports. DHS Notice dated 7/6/2017. The first sentence of the notice reads, "YOU ARE LISTED IN THE STATEWIDE DATABASE FOR CHILD ABUSE AS A PERPETRATOR IN AN INDICATED REPORT OF CHILD ABUSE[,]" and, as required by CPSL Section 6368, further delineates the consequences of the indicated report as follows:

> Being the perpetrator in an indicated report will probably prevent you from working in a child care service program or a public or private school or from becoming a foster care or adoptive parent. It could also prevent you from volunteering in a child care services program or public or private school or from obtaining certain educational degrees or certificates. It may also affect many other types of jobs.

*Id.*; *see* 23 Pa.C.S. §6368(f)(4) (notice of final determination "shall include[,]" *inter alia*, "[t]he effect of the report upon future employment opportunities involving children."). The closing statement of the notice provides, "If you disagree with the decision that you committed abuse, you have a right to a review of that decision." *Id.* An enclosed form titled "Request for Review or Hearing" instructs the recipient to "Fill out this form if you

---

[2] The Crimes Code defines "endangering the welfare of children" as follows: "(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa. C.S. §4304(a)(1).

disagree with the report listing you as a child abuser and want it to be reviewed." Request for Review or Hearing dated 8/3/2017. The form, in its entirety, includes designated spaces for contact information, the report's identification number, signature and date, as well as two check boxes: the first box corresponds to a request for administrative review by DHS and provides space and instructions to explain the reasons for disagreement, and the second box corresponds to a request to "skip the review and go directly to a hearing" without space to include any elaboration. *Id.* J.F. fully completed the form, checked the second box for a hearing request, and timely returned it to DHS. *Id.*

While her administrative appeal of the CPS reports was pending, J.F. entered into an ARD for both criminal counts of endangering the welfare of children. Commonwealth v. [J.F.] Criminal Docket at 2 (R.R. at 116a). In pertinent part, the affidavit of probable cause supporting the criminal complaint against J.F. states, "On 9 May 2017, [J.F.] was interviewed [at the police station by the affiant police officer]. [J.F.] admitted to leaving the residence at some time after 0001 hours on May 7th 2017, and going to [a bar] and consuming alcohol to the point that she lost consciousness." Affidavit of Probable Cause dated 5/23/2017 (R.R. at 56a). The conditions for J.F.'s ARD included, *inter alia*, completion of a drug and alcohol evaluation, community service, and costs totaling approximately $2,500. Criminal Docket at 2, 6-7 (R.R. at 116a, 120a-121a).

As a result of J.F.'s entry into ARD, the county agency changed the status of the CPS reports from "indicated" to "founded," then filed a motion to dismiss J.F.'s administrative appeal, attaching the criminal court docket, and averring the factual circumstances of the ARD were the same as the CPS reports which authorized the county agency to change the reports' status to founded. DHS Notice dated 1/17/2018 (R.R. at 110a); Motion to Dismiss dated 12/18/2017 (R.R. at 113a). J.F. filed a response to the motion in which she requested the hearing on her challenge proceed, asserting "[a]

founded report of child abuse is issued where there has been an adjudication of child abuse in a court of law[,]" and arguing the statements in the affidavit of probable cause upon which her criminal charges were based did not meet the definition of child abuse nor establish any serious physical injury or imminent risk of injury to the children, and acceptance into the ARD program did not constitute a judicial finding relating to the seriousness of injury or risk level. Response to Motion to Dismiss dated 12/28/2017 at ¶¶13, 16-18 (R.R. at 18a-19a).

The administrative law judge (ALJ) issued a Recommendation and Adjudication to grant the county agency's motion to dismiss J.F.'s appeal without a hearing. *J.F. In re: C.F. et al.*, Recommendation and Adjudication dated 2/28/2018 (Bureau of Hrgs. & Appeals) (R.R. at 8a-15a). Therein, the ALJ issued findings of fact as related by the CPS reports and the affidavit of probable cause, and reasoned the hearing was not necessary because: first, the CPSL definition of child abuse regarding serious physical neglect does not require findings related to severity of injury or risk level as J.F. claimed, but rather a showing of egregious failure to supervise which was met by J.F.'s admission she left the children unsupervised for hours while she was at a bar; and second, the factual circumstances described in the CPS reports and affidavit of probable cause were identical, thus J.F.'s entry into ARD for child endangerment charges met the CPSL definition of founded report, to which there is no right to administrative appeal. *Id.* (R.R. at 14a). The DHS Bureau of Hearings and Appeals (Bureau) entered an order wholly adopting the ALJ's recommendation. *Id.*, Order dated 3/28/2018 (R.R. at 8a).

J.F. petitioned for review before the Commonwealth Court, which reversed the Bureau's dismissal of J.F.'s request and concluded she was entitled to an administrative hearing. *See J.F. v. Dep't of Human Services*, 204 A.3d 1042 (Pa.Cmwlth. 2019). The court recognized the CPSL guarantees a hearing for named child abuse perpetrators

seeking to challenge indicated reports of child abuse, but such a guarantee does not apply to founded reports. *Id.* at 1046-47, *citing* 23 Pa.C.S. §§6341(a)(2) (any named perpetrator may request either administrative review or a hearing to amend or expunge "an indicated report"), (c) (right to appeal and request administrative hearing withstands department's refusal or failure to perform an administrative review requested pursuant to subsection (a)(2)), (c.1) (named perpetrator in founded report must provide to department "a court order indicating that the underlying adjudication that formed the basis of the founded report has been reversed or vacated"), (c.2) ("A person making an appeal under **subsection (a)(2) or (c)** shall have the right to a timely hearing to determine the merits of the appeal.") (emphasis added). However, the court reasoned that though the CPSL "did not provide a mechanism for a perpetrator to challenge a founded report . . . '[t]his statutory omission does not mean that a named perpetrator in a founded report does not have any right of appeal.'" *Id.* at 1047, *quoting J.G. v. Dep't of Public Welfare*, 795 A.2d 1089, 1092 (Pa. Cmwlth. 2002).

In reaching its conclusion that an administrative hearing was required in this case, the court reviewed its prior decisions in *J.G.*, 795 A.2d 1089, and *R.F. v. Dep't of Public Welfare*, 801 A.2d 646 (Pa. Cmwlth. 2002), wherein the court interpreted provisions of the Administrative Agency Law, 2 Pa.C.S. §§101-754, to require the Bureau to afford an administrative hearing to a named perpetrator challenging a founded report of child abuse when certain facts warranted resolution. *Id.* at 1047-48.

In *J.G.*, where the child who was the subject of an indicated CPS report exhibited injuries consistent with shaken baby syndrome, the orphans' court adjudicated the child dependent and made a finding the child had been abused; however, the orphans' court did not make a definitive finding regarding the identity of the perpetrator of the abuse. 795 A.2d at 1090-91. The county agency then changed the status of the CPS report, which

named both of the child's parents as perpetrators, to founded. *Id.* The child's mother sought to challenge the county agency's founding of the CPS report. *Id.* at 1091. On appeal from the Bureau's denial of an administrative hearing, the Commonwealth Court determined the founded CPS report was an agency "adjudication" pursuant to Section 101 of the Administrative Agency Law because it impacted the personal rights of named perpetrators, including the right to their reputation, by "branding him or her as a child abuser in a Statewide central register of child abuse." *See id.* at 1092 *citing* 2 Pa.C.S. §101 (defining "adjudication" as any decision or determination by an agency "affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made"). The court then anchored its decision on Section 504 of the Administrative Agency Law, which provides, "'[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.'" *Id.*, *quoting* 2 Pa.C.S. §504. The *J.G.* court concluded, because the mother's name would indefinitely appear on the statewide child abuse registry as a named perpetrator of child abuse, but the dependency court had made no factual adjudication of who perpetrated the child abuse, she was entitled to pursue her administrative appeal "to determine whether the adjudication of abuse constitute[d] sufficient evidence to support a founded report that [the child's mother] committed that abuse." *Id.* at 1093.

In *R.F.*, the county agency filed an indicated CPS report naming the child's father as a perpetrator of sexual abuse. 801 A.2d at 647. The child's father was also criminally charged, and as a condition of a plea bargain agreement, he pleaded *nolo contendere* to one count of Endangering the Welfare of Children, 18 Pa.C.S. §4304, but not to any sexual abuse. *Id.* The county agency then changed the status of the CPS report from indicated to founded, the Bureau dismissed the father's expungement request without a

hearing, and the father appealed. *Id.* at 648. Similar to its course in *J.G.*, the Commonwealth Court grounded its decision in Section 504 of the Administrative Agency Law, holding the father was entitled to an administrative hearing to determine whether the child endangerment plea, which the child's father contended was not related to any incident of sexual abuse, involved the same factual circumstances to serve as the basis for a founded CPS report. *Id.* at 649.

Relating *J.G.* and *R.F.* to the case under consideration, the Commonwealth Court observed that a founded CPS report, because it is a final determination by an agency that affects a person's personal rights or privileges, is "unquestionably" an adjudication as defined by the Administrative Agency Law, which further instructs, "'[n]o adjudication . . . shall be valid . . . [without] notice of a hearing and an opportunity to be heard.'" *J.F.*, 204 A.3d at 1049, *quoting* 2 Pa.C.S. §504. The court cautioned that any collateral attack on a judicial adjudication via an administrative appeal would be prohibited, but here, where no facts were adjudicated as part of the ARD proceeding, and no judgment or record arose from the proceeding, there was also no finding about the level of risk in which J.F. placed her children, and a challenge to the founding of the report would not constitute an improper collateral attack. *Id.* The court thus determined the allegations in a criminal complaint and statements in an affidavit of probable cause do not necessarily suffice as adjudicated facts in a founded CPS report based solely upon a named perpetrator's entry into ARD, and concluded J.F. was entitled to a hearing on whether the county agency correctly amended the indicated reports of child abuse from indicated to founded. *Id.*

Judge Wojcik dissented, viewing the majority's analysis as reframing J.F.'s argument into a due process challenge rather than the substantial evidence challenge she pleaded, and opining its decision expanded the law to afford an evidentiary hearing before DHS for every founded report of child abuse. *Id.* at 1050 (Wojcik, J. dissenting).

The dissent noted, under the Crimes Code, a parent commits the criminal offense of child endangerment if it "'knowingly endangers the welfare of a child by violating a duty of care, protection or support[;]'" and under the CPSL, a county agency may substantiate a CPS report based on, among other things, a perpetrator's admission to acts constituting an intentional, knowing, or reckless "causing [of] serious physical neglect of a child[,]" per Section 6303(b.1), which is further defined by Section 6303(a) as conduct that "endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning [including, *inter alia*]: a repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities." *Id.* at 1050-51, *quoting* 18 Pa.C.S. 4304(a)(1) (defining "endangering the welfare of children"); 23 Pa.C.S. §§6303(a) (defining "indicated report" and "serious physical neglect"), (b.1)(7) (defining "child abuse"). The dissent rejected J.F.'s claim based on Section 6303(b.1) that the facts supporting the child endangerment charges did not establish an imminent risk of serious physical injury, and instead approved of the Bureau's determination Section 6303(b.1) does not require any "imminent risk of serious physical injury" where the CPS report's basis is serious physical neglect, which is met by a showing of egregious failure to supervise a child. *Id.* at 1052. The dissent further approved of the Bureau's observation the county agency's substantiation of abuse in the CPS report, as well as the probable cause underlying the criminal charges for which she entered ARD, hinged upon the same admission — that is, J.F. left her children alone and unsupervised for over six hours while she went to a bar and drank alcohol until she lost consciousness — emphasizing that J.F. never challenged the accuracy of the documents reflecting she did in fact leave the children alone overnight. *Id.* at 1052-53.

Thus, in the dissent's view, the factual circumstances underlying J.F.'s acceptance into ARD were the same as those involved in the allegation of child abuse, and provided a proper basis for a founded CPS report which did not require an evidentiary hearing. *Id.* The dissent distinguished *J.G.* and *R.F.*, both of which dealt with circumstances where an evidentiary hearing would resolve clear factual questions — *i.e.*, the identity of the perpetrator, *see J.G.*, and the conduct considered child abuse, *see R.F.* — from this case, where the factual circumstances were not challenged. *Id.* at 1053-54. Further, the dissent challenged the oft-recited statement from *J.G.* that a founded report of child abuse constitutes an "adjudication" because it "affects a named perpetrator's personal rights by branding him or her as a child abuser" on the statewide database; according to the dissent, the founding of a report does not decide facts or charges but is instead premised upon, or a reflection of, an adjudication or voluntary disposition of charges, and therefore is not itself an "adjudication." The dissent also noted that, after *J.G.* was decided, this Court determined the entry of a perpetrator's name on the statewide child abuse registry was not a deprivation of the constitutional right to reputation because, by statute, the information therein was not available to the public and only to a specified list of entities under specific circumstances, and thus a foundational principle of *J.G.* relied upon by the majority was inconsistent with controlling precedent. *Id.* at 1054-55, *citing R. v. Dep't of Public Welfare*, 636 A.2d 142, 149-50 (Pa. 1994) (child abuse registry is not a deprivation of constitutional right to reputation), *G.V. v. Dep't of Public Welfare*, 91 A.3d 667 (Pa. 2013) (reversing Commonwealth Court decision for failure to follow *R.*'s analysis of statutory limitations on child abuse registry information with regard to perpetrator's reputation).

DHS petitioned for allowance of appeal of the Commonwealth Court's decision to this Court. We accepted the following issue for review:

> Is a perpetrator of child abuse entitled to an administrative hearing on the facts of a founded report after her entry into an accelerated rehabilitative disposition program when the perpetrator admits that the factual circumstances leading to the criminal charges match those on which the founded report was based?

*J.F. v. Dep't of Human Services*, 221 A.3d 631 (Table) (*per curiam*). As an appeal by allowance from a decision of an administrative agency, "[o]ur review requires that the agency decision be affirmed absent a finding that constitutional rights were violated, an error of law was committed, that the procedure before the agency was contrary to statute, or that the findings of fact are not supported by substantial evidence." *G.V.*, 91 A.3d at 672; *see also* 2 Pa.C.S. §704. Because the issue presented is a question of law, our standard of review is *de novo* and our scope is plenary. *Id.* at 670 n.5.

### III. Arguments

DHS advances the plain language of the CPSL in support of its position the Commonwealth Court majority erred by requiring an administrative hearing on a founded report where the named perpetrator's admission leading to her criminal charges and subsequent entry into ARD were based on the same factual circumstances and admission as the founded CPS report. Appellant's Brief at 10. DHS observes, unlike the statutory provisions regarding an indicated report which clearly provide for the right to a review or hearing, the CPSL provides no right of appeal for founded reports. *Id.* at 11. However, DHS recognizes the Commonwealth Court's jurisprudence has established a limited availability of administrative review of founded reports, strictly for the purpose of assessing whether the facts and circumstances of the determination serving the basis for the founded report match those in the child abuse report. *Id.* Here, DHS contends, because J.F. admitted to the factual circumstances underlying both the child abuse reports and the child endangerment charges, and never claimed the circumstances differed, she failed to pursue her only avenue for appeal to the Bureau; instead, according to DHS, J.F.'s actual arguments — *i.e.*, that the facts supporting ARD do not produce a

judicial determination concerning severity of injuries or level of risk, that a defendant may be innocent of the allegation but choose to enter ARD, and that she should be granted a hearing before the Bureau to explain her version of the incident and her reasons for entering ARD — are irrelevant. *Id.* at 12-13. Moreover, because facts are generally not adjudicated as part of an ARD, DHS argues requiring an adjudication of facts to support a founded report ignores the legislative intent of the CPSL and essentially rewrites its definition of "founded report," which was amended in 2013 to specifically include the voluntary dispositions of ARD and consent decree as grounds for founding a report where it had previously only authorized the founding of a report following certain judicial adjudications. *Id.* at 12-14. Finally, DHS asserts the Commonwealth improperly raised the issue of due process *sua sponte*, despite J.F. never claiming her due process rights, or the Administrative Agency Law, had been violated. *Id.* at 15-16.

Consistent with her position before the Bureau and the Commonwealth Court, J.F. argues the affidavit of probable cause and allegations in the criminal complaint, upon which there is no adjudication of any facts upon her entry into ARD, do not provide a sufficient factual basis to determine if the criteria for child abuse has been met, and therefore are not sufficient to warrant the denial of an administrative hearing. Appellee's Brief at 2-3. Because there is no record to review from the ARD proceeding, according to J.F., there is no reliable way to determine if "the reason for the acceptance [into an ARD program] 'involves the same factual circumstances involved in the allegation of child abuse'" as is required to meet the CPSL's criteria for a founded report. *Id.* at 4, *quoting* 23 Pa.C.S. 6303(a) (definition of "founded report"). Thus, J.F. contends, she should be granted an evidentiary hearing before the Bureau to afford her the opportunity to provide her version of the incident, and her reasons for entering the ARD program.

### IV. Analysis

Notwithstanding the merits of J.F.'s challenge to the substantiated reports of child abuse, which are not before the Court, this case reaches our review from J.F.'s request to be heard on her challenge via an administrative hearing, which the DHS Bureau of Hearings and Appeals denied. The sole matter before the Commonwealth Court was whether dismissal of J.F.'s challenge without a hearing was in error. We now address whether the Commonwealth Court properly reversed the Bureau's denial.

Hearings and appeals conducted by DHS, through the Bureau, are governed by Pennsylvania's Administrative Agency Law, 2 Pa.C.S. §§101-754, and the General Rules of Administrative Practice and Procedure, 1 Pa. Code §§31.1-35.251. *See generally*, 55 Pa. Code §§3490.106, 3490.106a, 3490.136, 3490.192 (hearings pursuant to Child Protective Service Law "will be conducted under 2 Pa.C.S. §§501-508 and 701-704 . . . and 1 Pa. Code Part II").

Incorporated into our standard for reviewing appeals of agency decisions, Section 704 of the Administrative Agency Law is instructive regarding a reviewing court's options for disposing of the appeal, providing, in pertinent part,

> [T]he court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S. §704. Under Subchapter A of Chapter 5, Section 504 of the Administrative Agency Law, titled "Hearing and record," provides,

> **No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.** All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

2 Pa.C.S. §504 (emphasis added). Thus, we must first determine whether a founded report of child abuse is an "adjudication of a Commonwealth agency," and if it is, whether the named perpetrator in a report that is founded on the basis of entry into ARD is afforded an opportunity to be heard sufficient to meet the requirements of the Administrative Agency Law.

## A. Agency Adjudication

Section 101 of the Administrative Agency Law defines "adjudication" for purposes of that statute as follows:

> **Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.** The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa.C.S. §101 (emphasis added). The Commonwealth Court, through long-standing and unchallenged precedent, has determined this definition encompasses founded reports of child abuse because the report burdens the named perpetrator's personal rights "by branding him or her as a child abuser in a Statewide central register of child abuse." *J.G.*, 795 A.2d at 1092. In reaching this conclusion, the *J.G.* court relied on *A.Y. v. Commonwealth*, 641 A.2d 1148 (Pa. 1994), where this Court underscored the importance of properly weighing hearsay evidence in an administrative expungement hearing by stating: "[A]n administrative adjudication of suspected child abuse is of the most serious nature. Therefore, this society, which was founded upon, *inter alia*, its citizens' 'inherent and indefeasible rights . . . of acquiring, possessing and protecting property and **reputation**,' cannot blithely surrender those rights[.]" *J.G.*, 795 A.2d at 1093-94, *quoting A.Y.*, 641 A.2d at 1152 (quoting Pa. Const. art. I, §1) (emphasis in *A.Y.*). The Commonwealth Court has adopted this line of reasoning from *J.G.* as precedential. *See*

*J.F.*, 204 A.3d at 1053-54 (Wojcik, J. dissenting); *see also, e.g. R.F.*, 801 A.2d at 649 (relying on *J.G.*, "a founded report of child abuse is an adjudication" under the Administrative Agency Law); *J.M. v. Dep't of Public Welfare*, 94 A.3d 1095, 1099 (Pa. Cmwlth. 2014) (quoting *J.G.*, 795 A.2d at 1092, "A founded report of child abuse constitutes an 'adjudication' as it is a final determination which . . . affects a named perpetrator's personal rights by branding him or her as a child abuser in a Statewide central register of child abuse."); *J.C. v. Dep't of Public Welfare*, 138 A.3d 57, 64 (Pa. Cmwlth. 2016) (same).

However, subsequent to *A.Y.*, and the Commonwealth Court's decision in *J.G.*, this Court directly considered the impact of the consequence of a substantiated CPS report, *i.e.*, the named perpetrator's inclusion on the statewide child abuse database, on the individual's constitutional right to reputation, and concluded there was no deprivation of reputation sufficient to invoke constitutional due process protections beyond what was already established by law. *R. v. Commonwealth, Dep't of Public Welfare*, 636 A.2d at 149-53. In *R.*, the Court recognized individuals have an interest in their reputation which is protected by Article I, Section 1 of the Pennsylvania Constitution.[3] *Id.* at 149, 152. Nevertheless, the *R.* Court explained that the strictures of the CPSL mandate confidentiality of information contained in the statewide child abuse registry, with the release of information provided only to certain listed entities in specifically defined circumstances. *Id.* at 149-50, *citing* 23 Pa.C.S. §§6340(a) (listing entities to whom confidential reports "shall only be made available"). Because these legislatively-imposed controls prevented the named perpetrator from being stigmatized in the eyes of the

---

[3] Article I, Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and **reputation**, and of pursuing their own happiness." PA. CONST. art. I, §1 (emphasis added).

general public, the risk of adverse impact to his reputation was limited, outweighed by the state's interest in protecting the child from future abuse, and not a sufficient basis to require process beyond what was afforded by the established procedures for challenging a substantiated child abuse report. *Id.* at 150-53; *see also G.V.*, 91 A.3d at 673-74 (reversing Commonwealth Court's determination due process required a clear and convincing, rather than substantial, evidence standard in child abuse expungement appeals due to potential adverse effects on named perpetrator's reputation). According to the dissent below, the controlling precedent espoused by *R.* and *G.V.* undermines the basis of the Commonwealth Court's well-established principle that a founded report is an adjudication as anticipated by the Administrative Agency Law. *See J.F.*, 204 A.3d at 1055-56.

Yet, returning to the definition of an "adjudication" by a Commonwealth agency, the question is not, as *J.G.* and its progeny might suggest, whether the "branding" of a named perpetrator of child abuse in the statewide database is a deprivation of a constitutional right to reputation, but, more broadly, whether the consequence of being a registered child abuser "affect[s the] personal or property rights, privileges, immunities, duties, liabilities or obligations" of the individual. *See* 2 Pa.C.S. §101. As described *supra*, the effects of inclusion as a perpetrator on the statewide child abuse database are restrictions on employment and volunteer activities in schools and childcare settings, preclusion from certain types of housing and educational opportunities where clearances are required, and a prohibition from becoming a foster parent or adopting a child from foster care. 23 Pa.C.S. §§6344, 6344.1, 6344.2; DHS Notice dated 7/6/2017; *see also Interest of L.J.B.*, 199 A.3d 868, 870 (Pa. 2018) (inclusion on statewide child abuse database "impacts a person's ability to obtain certain kinds of employment, housing, and participate in certain volunteer activities"). This loss of privileges results as a

consequence of entry into the statewide child abuse database whether the agency determines the report is "indicated" or "founded." 23 Pa.C.S. §§6331(3) (statewide database of protective services "shall include" indicated and founded reports of child abuse), 6336(a)(1),(10) (database "shall include[,]" *inter alia*, name of perpetrator and "whether the report was determined to be founded, indicated or unfounded"), 6338(c) (database "shall indefinitely retain the names of perpetrators of child abuse and school employees who are subjects of founded or indicated reports" if their dates of birth or social security numbers are known); *see also id.* §§6344, 6344.1, 6344.2 (prohibiting employment, volunteer, foster parent, adoption, and housing opportunities to individuals named as a perpetrator in the statewide database). Regardless of any impact on an individual's reputation, such loss of privileges is mandated by the CPSL based upon the agency's action on the report and further documented in official notice to the named perpetrator as required by the statute, and thereby restricts, or "affects," an individual's — particularly a parent's — ability to participate in basic opportunities otherwise available to non-registrants. This bundle of consequences is thus sufficient to meet the definition of "adjudication" pursuant to the Administrative Agency Law.[4] *See* 2 Pa.C.S. §504.

### B. Opportunity for Hearing

Because J.F.'s founded reports of child abuse are agency adjudications, we next review whether she was afforded adequate opportunity to be heard as required by Section 504 of the Administrative Agency Law. *See id.*

---

[4] As further explained *infra*, though it may be accurate to view a founded report as a "reflection" of a judicial adjudication or voluntary disposition, *see J.F.*, 204 A.3d at 1054 (Wojcik, J., dissenting), we note the concepts of administrative adjudication and judicial adjudication are distinct. A founded report is not itself a **judicial** adjudication or disposition, though it does reflect one; nonetheless, its consequences actualize pursuant to action taken by an agency which constitutes an **agency** adjudication.

As described *supra*, a report of child abuse is founded where, based on the same facts and circumstances of the child abuse report, either: a court has made a judicial adjudication based on a finding the child was abused, including a plea of nolo contendere or a plea or finding of guilt in a criminal matter, or a finding of abuse made in a dependency, delinquency, or protection from abuse matter, *see* 23 Pa.C.S. §6303 defining "founded report" at (1),(4); or, a court has accepted a voluntary disposition of ARD, or a consent decree in a juvenile matter, *see id.* at (2),(3). Unlike an indicated report, which is solely an agency-level adjudication, a founded report additionally reflects a judicial adjudication or disposition made based on the same factual circumstances.

Because the "founded" designation is dependent upon a judicial determination, the denial of a hearing on an administrative appeal of a founded report has typically been upheld by the Commonwealth Court where it would constitute an impermissible collateral attack on the judicial action. *See, e.g.*, *J.C. v. Dep't of Public Welfare*, 138 A.3d 57, 64-65 (Pa. Cmwlth. 2016) ("Because [the named perpetrator] was afforded a full and fair counseled opportunity to be heard in his criminal action regarding the same abuse charges that formed the basis for the founded reports, his expungement request must be barred as an impermissible collateral attack of his underlying criminal convictions."); *see also, e.g.*, *J.G.*, 795 A.2d at 1093 (where dependency adjudication of child abuse did not determine who perpetrated abuse, the named perpetrator's administrative appeal was not a collateral attack of dependency adjudication and administrative hearing was warranted), *R.F.*, 801 A.2d 646, 649 (where named perpetrator did not challenge plea of *nolo contendere* to child endangerment, but asserted the plea was unrelated to allegations of abuse, challenge was not collateral attack of plea, and perpetrator was entitled to administrative hearing on whether report was properly founded). Consistent with this prohibition, while the CPSL explicates the procedural mechanism for administratively

challenging an indicated report of child abuse — that is, the named perpetrator may request administrative review and/or a hearing pursuant to Section 6341, subsections (a)(2), (c), and (c.2) — the CPSL provides no such procedure for challenging a founded report, only that the named perpetrator therein "must provide to the [D]epartment [of Human Services] a court order indicating that the underlying adjudication that formed the basis of the founded report has been reversed or vacated." 23 Pa.C.S. §6341(c.1); *see id.* at (a)(2), (c), (c.2) (relating to administrative review and hearing to amend or expunge indicated reports).

DHS concedes this silence on administrative protocol for reviewing a founded report does not mean the Bureau cannot review a founded report; however, it contends the Commonwealth Court has narrowed such review to only whether the factual circumstances underlying the founded report are the same as the factual circumstances underlying the judicial adjudication or disposition upon which the founding is based. Appellant's Brief at 11. But the Commonwealth Court has articulated at least one other important basis for requiring an administrative hearing on a founded report, that is, where the record could not confirm whether the dependency court's adjudication of child abuse provided the named perpetrator with reasonable notice and a full and fair opportunity to be heard in the proceeding. *See J.M.*, 94 A.3d at 1100-01.

In *J.M.*, the Commonwealth Court reviewed its prior decisions' reliance on the prohibition of collateral attacks in decisions to affirm or reverse the Bureau's denial of a hearing, noting a critical feature of a collateral attack was whether the named perpetrator had a "full and fair opportunity to be heard" in the judicial proceeding reflected by the founded report at issue — and includes the opportunity to present evidence, to cross-examine all witnesses, and to rebut evidence of abuse and neglect. *Id.* at 1099-1100. The court opined that where such features were present in the judicial proceeding, an attempt

to file an administrative appeal from a founded report based on the same factual circumstances constitutes a collateral attack. *Id.*, *citing K.R. v. Dep't of Public Welfare*, 950 A.2d 1069 at 1078-80 (Pa. Cmwlth. 2008) ("[I]f the findings made in the dependency proceeding in this case establish that K.R. abused the minors, it is unnecessary to provide K.R. with a separate administrative hearing to establish that K.R. abused the minors."). However, the *J.M.* court concluded where such features were not present, the named perpetrator's administrative appeal was not a collateral attack, and the dependency adjudication could not serve as the basis for the founded report; thus remand to the Bureau for an administrative hearing was appropriate. *Id.* at 1101, *citing* 2 Pa.C.S. 504; *id.* at n.11.

Likewise, we find the "full and fair opportunity to be heard" in the judicial proceeding reflected by the founded report to be dispositive as to whether the requirements in Section 504 of the Administrative Agency Law are met. The judicial disposition, which verifies the allegations in the report via the factual findings and admissions the court makes or accepts in connection with its proceeding, confers upon the report the status of being "founded." For such status to be properly conferred, the judicial adjudication or disposition "must resolve all of the issues in the [CPS] report definitively and conclusively." *C.F., IV v. Dep't of Human Services*, 174 A.3d 683, 692 (Pa. Cmwlth. 2017). It is for this reason a judicial adjudication cannot (usually) be collaterally attacked in an administrative proceeding, and for this same reason the only mechanism to challenge a founded report has been to appeal from and contest the judicial adjudication. *Id.*

Where the founded report reflects a judicial adjudication that is "based on a finding that a child who is a subject of the report has been abused" per Section 6303 of the CPSL, as in a criminal, juvenile delinquency, juvenile dependency, or protection from abuse matter, the contest is relatively straightforward: the court provides the opportunity for an

evidentiary hearing, on a record, in which the named perpetrator may present a case, cross-examine witnesses, challenge evidence, and make arguments to attack the merits of the child abuse report, and the final outcome may be appealed to a higher court. In assessing the validity of the founded report in relation to Section 504 of the Administrative Agency Law, these features of judicial review demonstrate the statute's requisite elements, *i.e.,* "reasonable notice[,]" "an opportunity to be heard[,]" and "a full and complete [stenographically recorded] record[.]" 2 Pa.C.S. §504.

However where, as here, the founded report reflects acceptance into ARD, the court's disposition is a non-final, "deferred adjudication," which the court makes in its discretion without a record hearing, and without any factual determinations on the merits. *See* Pa.R.Crim.P. 312-315. Further, though the defendant in an ARD proceeding waives her right to an evidentiary hearing and to challenge and present evidence, neither she, nor the Commonwealth, nor the court, is thereby bound by any admission she makes within the proceeding. *Id.* 313(B) ("No statement presented by the defendant [in an ARD proceeding] shall be used against the defendant for any purpose in any criminal proceeding[.]"). In an ARD proceeding, the court does not resolve all of the issues in the child abuse report definitively and conclusively; indeed, as is necessary within the accelerated rehabilitation process, it does not do so at all.

Thus, though a "full and fair" opportunity to be heard is provided in due course when a founded report reflects a judicial adjudication, no such opportunity exists when the founded report reflects an ARD. Consequently, because the ARD judicial proceeding does not provide an opportunity to challenge, on the record, the factual underpinnings of the founded report, the requisite "opportunity to be heard" mandated by the Administrative Agency Law is not met, and the founded report cannot be considered a valid adjudication without further process. 2 Pa.C.S. §504.

To the extent DHS asserts J.F.'s request for a hearing is not warranted because she fails to demonstrate that the factual circumstances of the substantiated child abuse reports are not the same as those underlying the reason for her acceptance into ARD, while we pass no judgment on the merits of J.F.'s challenge to the reports, we are cognizant that the initial "pleading" in this litigation consists of nothing more than a DHS form document on which J.F. checked a box to request a hearing. DHS advances no provision of the General Rules of Administrative Practice and Procedure that would bar J.F. from unfolding the relevant aspects of her challenge within the context of an administrative hearing, nor does our review identify any provision that would operate as such a bar; indeed, in this case, it appears an administrative hearing before the Bureau is the only appropriate place for J.F. to make such a demonstration. *See* 1 Pa. Code §§31.1-35.251. As there was no other appropriate forum for J.F. to be afforded a full and fair opportunity to be heard on the record, she should have been allowed the opportunity to challenge the founded reports of child abuse in an administrative hearing before the Bureau.

## V. Conclusion

Accordingly, we hold that, in the absence of another appropriate forum to challenge DHS's adjudication of child abuse in a recorded evidentiary hearing, a named perpetrator in a report designated as "founded" based upon the perpetrator's voluntary entry into an accelerated rehabilitative disposition is entitled to an administrative hearing. We therefore affirm the Order of the Commonwealth Court.

Chief Justice Saylor and Justices Baer, Todd, Donohue and Wecht join the opinion.

Justice Mundy files a Dissenting Opinion.